TAYLOE, J.
The issue in this case is whether it is permissible for Michigan trial judges, sentencing under the legislative sentencing guidelines pursuant to MCL 769.34, to consider, for the purpose of a downward departure from the guidelines range, police conduct that is described as sentencing manipulation, sentencing entrapment, or sentencing escalation. These doctrines are based on police misconduct, which, alone, is not an appropriate factor to consider at sentencing. Rather, we hold that, pursuant to People v Babcock, 469 Mich 247; 666 NW2d 231 (2003), if it can be objectively and verifiably shown that police conduct or some other precipitating cause altered a defendant’s intent, that altered intent can be considered by the sentencing judge as a ground for a downward sentence departure. Because information of this sort was noted by the sentencing judge in this case, but it is not clear that it was used *719 properly, we vacate the decision of the Court of Appeals in part and remand this case to the trial court for resentencing or rearticulation on the record of the court’s reasons for the departure.
I. FACTS AND PROCEDURAL BACKGROUND
This case arose from a series of sales of crack cocaine by defendant to an undercover police officer. An acquaintance of defendant’s in the drug trade introduced him to an undercover officer as a potential customer. On March 8, 2001, the officer bought 28.35 grams of crack cocaine for $1,100. On March 12, 2001, he bought 49.2 grams for $2,000. Finally, on March 14, 2001, he bought 127.575 grams for $4,000. Defendant was arrested and charged with delivery of 50 or more, but less than 225, grams of cocaine, reflecting the third sale.
Defendant pleaded guilty to this charge.[1] The offense carries a statutorily mandated minimum sentence of ten years of imprisonment.[2] However, according to the legislative sentencing guidelines and the former MCL 333.7401(4),[3] the statutorily mandated minimum ten-year sentence for this offense can be reduced or “de *720 parted from,” as it is described, if certain conditions set forth in MCL 769.34(3)[4] are met.
At the sentencing hearing, the defense requested a downward departure from the statutorily mandated ten-year minimum sentence on the bases that defendant has a limited criminal history (only one criminal conviction for misdemeanor retail fraud) for his age of twenty-six[5]
[6]and that he has an addiction to cocaine, which was costly and jeopardized his ability to pay for his home. In this case, defense counsel also argued that the police had manipulated defendant by making repeated purchases for increasing quantities of cocaine and that, by doing so, they “escalated” the sentence to *721 which defendant would be subjected. In particular, defense counsel argued that the undercover police officer did not arrest defendant after either of the initial buys, but went back to him repeatedly to purchase cocaine. The defense argued that the officer even paid defendant at least $500 more than the going rate to persuade him to sell a larger quantity of crack cocaine than he otherwise would have sold.
The prosecutor countered that the officer had legitimate law enforcement reasons for the repeated purchases. Those reasons were that many usual sellers of large amounts only will sell small amounts to new buyers, and, thus, it is only by working up to larger amounts that law enforcement can in fact determine what type of seller the suspect is. The prosecutor, however, did not address the defense’s distinct claim that no matter what the police motivation may have been, the fact that the police paid defendant $500 over the market price was the sole reason defendant’s intent to sell changed from selling a lesser amount to selling a greater amount.
At the conclusion of these arguments, the trial court found substantial and compelling reasons to depart from the mandatory minimum sentence on the basis of defendant’s age, minimal criminal history, and stable employment history of approximately two years, and, finally, on the basis of the fact that, in the court’s view, defendant had been “escalated” and precluded from getting substance abuse treatment earlier. The trial court did not indicate if the compelling nature of this escalation factor was the view that the police conduct itself was somehow offensive or that the police had overcome the will of a small dealer by the lure of more money and created a greater criminal out of someone who otherwise would have remained a lesser criminal. *722 The court then departed downward two years from the statutorily mandated minimum sentence of ten years and sentenced defendant to eight to twenty years of imprisonment.
The prosecutor appealed and the Court of Appeals affirmed, holding that all but one of the stated reasons of the trial court, defendant’s employment, were substantial and compelling reasons for a downward departure.[6] In a brief analysis, the Court agreed with the trial court’s decision to depart downward on the basis of “escalation,” citing People v Shinholster, 196 Mich App 531; 493 NW2d 502 (1992). Citing the short treatment of this issue in Shinholster, supra at 535, the Court stated that “while not constituting entrapment, purposeful[] escalation] [of] the defendant’s crime” is a permissible reason for a downward departure from a mandatory minimum sentence. Slip op at 2. The Court of Appeals also noted that in People v Fields, 448 Mich 58; 528 NW2d 176 (1995), “three of the four justices in the majority agreed that [escalation] was a permissible factor to consider . .. .” Slip op at 2 n 3.[7]
*723 This Court granted the prosecutor leave to appeal. We framed the issues on appeal as
whether “sentencing manipulation” or “escalation” is a substantial and compelling reason justifying a downward departure from a statutorily imposed mandatory minimum sentence, and whether a trial court may consider the legislative sentencing guidelines recommendation when determining the degree of a departure, which has already been determined to be supported by substantial and compelling reasons. [468 Mich 947 (2003).][8]
II. STANDARD OP REVIEW
To decide whether sentencing manipulation, sentencing entrapment, or sentencing escalation could ever be a substantial and compelling reason for a departure as a matter of law, we must interpret the former MCL 333.7401(4) and the general legislative sentencing guidelines provision in MCL 769.34(3). Statutory interpretation is subject to review de novo. People v Phillips, 469 Mich 390, 394; 666 NW2d 657 (2003). A trial court’s decision that a particular factor is sufficiently substantial and compelling for a departure is reviewed for an abuse of discretion. Babcock, supra at 269-270.
III. ANALYSIS
In Michigan, the Legislature has established sentencing guidelines. See MCL 769.31 et seq. The underlying approach of the guidelines is that the person to be *724 sentenced is first placed in a narrow sentencing compartment based on rigid factors surrounding the offense and offender variable statuses. Then the individual is eligible to be removed from such “default” compartments on the basis of individualized factors. See Bab-cock, supra at 263-264. In cases involving controlled substances, however, the Legislature has also established statutorily mandated minimum sentences. See the former MCL 333.7401. Under both provisions, MCL 769.34(3) and the former MCL 333.7401(4), departure from a guidelines range or mandatory sentence is permissible. See MCL 769.34(2)(a). All these provisions allow a downward departure if the court has a “substantial and compelling reason” for the departure. This Court has determined that this statutory language means that there must be an “ ‘objective and verifiable’ reason that ‘keenly or irresistibly grabs our attention’; is of ‘considerable worth’ in determining [the appropriate sentence]; and ‘exists only in exceptional cases.’ ”[9] Babcock, supra at 257-258, quoting Fields, supra at 62, 67-68.
*725 It is clear from the legislative sentencing guidelines that, as discussed in Babcock, supra at 263-264, the focus of the guidelines is that the court is to consider this criminal and this offense. As Babcock said after discussing the roots of our nation’s attachment to the concept of proportionality in criminal sentencing: “The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.” Id. at 263.
Because of this approach, police misconduct, on which the doctrines of sentencing manipulation, sentencing entrapment, and sentencing escalation are based,[10] is not an appropriate factor to consider at sentencing. Police misconduct, standing alone, tells us *726 nothing about the defendant. However, if the defendant has an enhanced intent that was the product of police conduct or any other precipitating factor, and the enhanced intent can be shown in a manner that satisfies the requirements for a sentencing departure as outlined in Babcock, it is permissible for a court to consider that enhanced intent in making a departure. [11]
IV APPLICATION TO THIS CASE
The trial court in this case concluded, without more, that the defendant was “escalated.” It is not clear whether the court was thinking about defendant’s intent or the police' conduct. Thus, resentencing or rearticulation of the court’s reasons for departure on this factor is required because, under MCL 769.34(3), “it is not enough that there exists some potentially substantial and compelling reason to depart from the guidelines range. Rather, this reason must be articulated by the trial court on the record.” Babcock, supra at 258 (emphasis in original). Moreover, a trial court must articulate on the record a substantial and compelling *727 reason why its particular departure was warranted. Id. at 259-260. The trial court is instructed to do this on remand.
Further, we hold that two of the other reasons for departure that the trial court articulated are not substantial and compelling: (1) defendant’s employment for two years, and (2) that at defendant’s age of twenty-six years he had only one previous criminal conviction.
With regard to the employment factor, we agree with the Court of Appeals that “defendant’s employment as a taxi cab driver... for a period of less than two years... does not ‘keenly’ or ‘irresistibly’ grab one’s attention and, therefore, does not warrant a downward departure.” Slip op at 2, quoting Fields, supra at 67. Thus, we affirm the Court of Appeals on this issue.
Nor does the fact that defendant only had one previous criminal conviction (misdemeanor retail fraud) until he reached the age of twenty-six[12] “‘keenly’ or ‘irresistibly’ grab[] our attention.” Babcock, supra at 257-258, quoting Fields, supra at 67. The trial judge stated that he was “impressed” that defendant had made it to the advanced age of twenty-six with only one previous criminal conviction of a minor nature. We are not. We do not believe that the age of twenty-six is particularly old to not yet have a more lengthy criminal record. Thus, the trial court abused its discretion in this regard. Babcock, supra at 269-270.
If a trial court articulates multiple reasons for departure, some of which are substantial and compelling and some of which are not, and the appellate court cannot determine if the sentence departure is sustainable without the offending factors, remand is appropriate. Id. at *728 260-261.[13] Accordingly, we remand this case for resen-tencing or rearticulation on the record of the trial court’s reasons for departure. On remand, defendant may argue any factor left unaddressed by our decision today, and, under the standards of Babcock, that his intent in committing the crime was also a proper factor for consideration.
V THE CHIEF JUSTICE’S OPINION
The Chief Justice is in agreement with our holding that police conduct alone cannot be considered at sentencing, and she is in agreement with the result of remanding for resentencing in this case. However, the Chief Justice disagrees with part of our rationale and contends that we are employing the subjective factor of intent to determine whether a sentencing departure is warranted in a particular case.
That is, she believes that because intent is subjective, it can never be shown to have been altered in an objective and verifiable way. We disagree. For example, if under surveillance a defendant is importuned to sell more of an illegal substance than he wished and it is clear that he would not have sold it absent the buyer’s pleas to do so, the tape of their conversations could well establish in an objective and verifiable fashion the change in the defendant’s intent. Similarly, if there is *729 evidence that after a physical assault the assailant helped the victim by securing medical assistance, this could establish objectively and verifiably an immediate repudiation of his previous criminal intent. This is all to say that the trial court cannot depart from the mandatory minimum sentence or guidelines sentence without basing its decision on some actual facts external to the representations of the defendant himself. While objectively and verifiably showing an altered intent will not be easy, nevertheless, we do not believe that the Legislature’s statutory sentencing scheme forecloses outright the consideration of a defendant’s altered intent at sentencing.
Moreover, we do not consider the intent element of this crime to be “nullified” by allowing a trial judge to consider altered intent as a factor for sentence departure, as the Chief Justice states, post at 735. The crime of delivery of a controlled substance of a particular amount is a general intent crime. See People v Mass, 464 Mich 615, 627; 628 NW2d 540 (2001). Thus, the only intent required to be convicted of the offense is the intent to deliver a controlled substance. The accused need not have the intent to sell a particular amount of the substance. Rather, that a particular amount was in fact sold is sufficient to convict the accused of delivery of that amount under the statute. See id. at 626, citing People v Quinn, 440 Mich 178, 189; 487 NW2d 194 (1992).
Therefore, our approach does not nullify an element of the offense. The element of intent to sell drugs is left untouched; indeed, defendant himself admitted that he sold drugs. However, defendant’s intent concerning the amount of drugs he sold may have been altered in this case when the police repeatedly returned to him to buy *730 ever-increasing amounts, if those amounts were in fact greater than what defendant originally intended to sell.
The Chief Justice asserts that by considering the defendant’s intent at the time of sentencing we are evading the Legislature’s determination that the specific intent of the individual not be considered for the purpose of conviction. Yet, we are not doing that. We are considering the defendant’s intent for the purpose of sentencing. It seems obvious that the sentencing stage is different from the trial stage. Indeed, the latitude for the trial court in sentencing to consider things inadmissible at trial can be found in the Legislature’s requirements of what a presentence report can contain. A presentence report prepared pursuant to MCL 771.14 can include hearsay, character evidence, prior convictions, and alleged criminal activity for which the defendant was not charged or convicted. Moreover, the sentencing guidelines themselves, MCL 769.34(3), use this approach by empowering the trial court to consider virtually any factor that meets the substantial and compelling standard. Certainly this encyclopedic grant allows the consideration of matters broader than those matters already before the court at trial, because if it did not, the statute would be conveying no greater authority than that previously possessed. Such a construction of the statute, a construction that makes the statute meaningless, should be avoided. See Sweatt v Dep’t of Corrections, 468 Mich 172, 183; 661 NW2d 201 (2003).[14]
*731 VI. CONCLUSION
In light of the applicable sentencing statutes and our recent decision in Babcock, we vacate the decision of the *732 Court of Appeals in part and remand this case to the trial court for resentencing or rearticulation of the court’s reasons for departure, consistent with this opinion.

 Defendant also pleaded guilty to charges concerning the first and second buys in the series and various other offenses that he committed during the time surrounding the series of buys. However, the present appeal involves only defendant’s sentence for the third offense described above, delivery of 50 or more, but less than 225, grams of cocaine.

 Former MCL 333.7401(2)(a)(iii), in effect at the time of this action. See 1996 PA 249.

 See MCL 769.34(2)(a). When the trial court imposes a mandatory minimum sentence that exceeds the statutory sentencing guidelines range, it is not departing from the statutory sentencing guidelines. Thus, in this case, although the sentence imposed exceeds the recommended sentence range, the trial court does not have to articulate “substantial and compelling” reasons to justify its upward departure from the guidelines. However, because the trial court departed downward from the *720 mandatory minimum, it must articulate such reasons to justify this downward departure from the mandatory minimum. See former MCL 333.7401(4).

 These conditions are:
A court may depart from the appropriate sentence range established under the sentencing guidelines [MCL 777.1 et seq.] if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. All of the following apply to a departure:
(a) The court shall not use an individual’s gender, race, ethnicity, alienage, national origin, legal occupation, lack of employment, representation by appointed legal counsel, representation by retained legal counsel, appearance in propria persona, or religion to depart from the appropriate sentence range.
(b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presen-tence investigation report, that the characteristic has been given inadequate or disproportionate weight. [MCL 769.34(3).]

 There was a dispute concerning whether defendant’s age was twenty-six or twenty-nine at the time of the offenses, but resolution of this issue is not necessary to our analysis.

 Unpublished opinion per curiam, issued October 18,2002 (Docket No. 238984).

 Specifically, the Fields Court stated in reference to Shinholster:
[T]he Court found that the government’s actions, although not rising to the level of entrapment, purposefully escalated the crime. This last factor is of particular importance in our approval of the resolution reached in Shinholster. As a mitigating circumstance surrounding the offense, it weighs heavily in favor of a deviation [departure] from the statutory minimum. [Fields, supra at 79.]
However, the present Court of Appeals panel properly pointed out that this was merely a plurality decision without binding effect because the fourth justice signing the lead opinion, Justice Boyle, authored a concurring opinion in which she refused to approve of the lead opinion’s discussion of Shinholster. Fields, supra at 81-82.

 Both parties agree that, with respect to the latter issue presented on appeal, the trial court did not impermissibly consider the legislative guidelines in the manner described here. Thus, neither party requests relief on this issue, and the issue is moot. See Crawford v Dep’t of Civil Service, 466 Mich 250, 261; 645 NW2d 6 (2002) (“ ‘An issue is moot where circumstances render it impossible for the reviewing court to grant any relief.’ ” [Citation omitted.]).

 Although some individualized factors may not, in the final analysis, constitute a sufficiently “substantial and compelling” basis for moving a person outside the original compartment, that should not preclude the trial court from considering whatever individualized factors that it sees as relevant. While it is possible, as the Chief Justice argues, that some factors can never be “substantial and compelling” because they can never be objective and verifiable, we are reluctant to characterize too many factors in this way because there are simply too many combinations of factual circumstances for us to feel confident in forever precluding consideration of some particular factor. As a practical matter, it also seems that the upshot of the Chief Justice’s viewpoint is that everything will have to be litigated twice through the appellate process—first, to address whether a factor is one that can ever be “substantial and compelling,” and, second, to consider whether it is “substantial and compelling” in the circumstances of a specific case. One of the virtues of the majority position is that it would sharply reduce the first of these classes of litigation.

 The federal definition of sentencing manipulation can be found in United States v Shephard, 4 F3d 647, 649 (CA 8,1993). The United States Court of Appeals for the Eighth Circuit held that sentencing manipulation occurs.when “the government stretche[s] out the investigation merely to increase the sentence [a defendant] would receive.” Although Michigan has not defined sentencing manipulation by case law, a majority of state courts addressing the issue has adopted similar language as the functioning definition of the term. See, e.g., People v Smith, 31 Cal 4th 1207, 1211-1212; 7 Cal Eptr 3d 559; 80 P3d 662 (2003).
Sentencing entrapment has been discussed by our Court of Appeals in People v Ealy, 222 Mich App 508, 510-511; 564 NW2d 168 (1997). There, the Court of Appeals referred to the definition from the United States Court of Appeals for the Ninth Circuit: “[S]entencing entrapment occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.” United States v Staufer, 38 F3d 1103, 1106 (CA 9, 1994) (citations and quotation marks omitted.
In the cases discussing sentencing manipulation and sentencing entrapment, reference is occasionally made to sentencing “escalation.” No Michigan case has defined this term, nor has any other court of which we are aware. However, we believe that contextually, sentencing escalation can mean either sentencing manipulation or sentencing entrapment, as defined above.
*726 The Chief Justice states that the substantive defense of entrapment is akin to the sentencing entrapment doctrine. This is not the case. The substantive defense of entrapment in Michigan is a complete bar to prosecution. See People v Johnson, 466 Mich 491, 493-494, 498; 647 NW2d 480 (2002). The doctrine of sentencing entrapment, as defined in the federal courts, merely allows a downward departure from a sentence. Thus, the two concepts have distinct effects—dismissal of the charges on one hand versus a (perhaps slightly) lower sentence on the other.

 A sentencing departure may be from either a sentence under a sentencing guidelines range or a statutorily mandated minimum sentence. Although Babcock is primarily concerned with the sentencing guidelines, its reasoning is equally applicable to this statutorily mandated minimum sentence case. See id. at 257 (acknowledging applicable statutorily mandated minimum sentences and citing Fields as a mandatory minimum case).

 Our analysis holds even if defendant were actually twenty-nine at the time of these offenses. See n 5.

 The Court of Appeals failed to adhere to this directive by failing to consider whether the trial court would have departed and would have departed to the same degree without the employment factor that the Court of Appeals found to be insubstantial and noncompelling. Thus, even if the Court of Appeals properly deemed “escalation” to be a substantial and compelling factor for departure in this case, the Court should have considered whether the trial court’s departure was sustainable without the offending factor of employment, and, if the Court could not do so, it should have remanded the case to the trial court for resentencing or rearticulation of the reasons for departure.

 The Chief Justice argues that the United. States Supreme Court’s recent decision in Blakely v Washington, 542 US_; 124 S Ct 2531; 159 L Ed 2d 403 (2004), affects this case. We disagree. Blakely concerned the Washington state determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Thus, the trial judge in that case was required to set a fixed sentence imposed within a range determined by guidelines and was able to increase the maximum *731 sentence on the basis of judicial fact-finding. This offended the Sixth Amendment, the United States Supreme Court concluded, because the facts that led to the sentence were not found by the jury. Blakely, supra at 2536.
Michigan, in contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. MCL 769.8. The minimum is based on guidelines ranges as discussed in the present case and in Babcock, supra. The trial judge sets the minimum but can never exceed the maximum (other than in the case of a habitual offender, which we need not consider because Blakely specifically excludes the fact of a previous conviction from its holding). Accordingly, the Michigan system is unaffected by the holding in Blakely that was designed to protect the defendant from a higher sentence based on facts not found by the jury in violation of the Sixth Amendment.
Justice O’Connor in her dissent in Blakely raised a concern similar to the one the Chief Justice now raises, but the majority in that case made clear that the decision did not affect indeterminate sentencing systems. The Court stated:
JUSTICE O’CONNOR argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. Post, at 1-10. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury’s traditional function of finding the facts essential to lawful imposition of the penalty. Of coruse indeterminate schemes involve judicial factfind-ing, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. {Blakely, supra at 2540 (emphasis added).]