KELLY, J.
(concurring in part and dissenting in part). My opinion in this case parallels my dissenting opinion in People v McCuller, 475 Mich 176; 715 NW2d 798 (2006). Because McCuller offers a better opportunity to explore the ramifications of Blakely v Washington[1] and associated United States Supreme Court cases, my opinion in that case more fully explores the pertinent issues.
I concur in the majority’s decision that Joseph Drohan’s sentence does not offend the Sixth Amendment. US Const, Am VI. I agree that, in cases like his, the “statutory maximum” for Blakely purposes is the maximum sentence allowed by law and provided by statute. I dissent, however, from the majority’s reliance on People v Claypool[2] as having precedential value here. I dissent also from the majority’s implication that the “statutory maximum” sentence under Michigan’s sentencing guidelines will always be the maximum sentence allowed by statute. As I explained in McCuller, when intermediate sanction cells are involved, the intermediate sanction is the “statutory maximum” for Blakely purposes. Because of the gravity and pervasive *166 ness of the intermediate sanction cell problem, I would find the sentencing guidelines no longer valid.
DEFENDANT’S SENTENCING
A jury convicted defendant of third-degree criminal sexual conduct[3] (CSC III) and fourth-degree criminal sexual conduct[4] (CSC IV). Defendant pleaded guilty of being a third-offense habitual offender. MCL 769.11. The focus of his appeal is his sentence for the CSC III offense. CSC III is categorized as a crime against a person and is listed as a class B offense. MCL 777.16y.
When it sentenced defendant, the court calculated his prior record variable (PRV) level at 20 points. With respect to the offense variables (OVs), it scored ten points for OV 4,[5]15 points for OV 10,[6] five points for OV 12,[7]
[8]and 25 points for OV 13.® Defendant objected at sentencing to the scores attributed to OVs 4 and 10, but the court rejected his arguments. His OV level was set at 55 points. In the class B sentencing grid, a PRV level of 20 points and an OV level of 55 points placed defendant in cell C-V MCL 777.63. That cell provides a minimum sentence range of 51 to 85 months. Because defendant was a third-offense habitual offender, the top number was increased by 50 percent to 127 months. MCL 777.21(3)(b). Accordingly, the trial court sentenced defendant to 127 months to 30 years of impris *167 onment. It also sentenced him to one to four years of concurrent imprisonment for the CSC IV conviction.
Defendant’s sentences were rendered before the United States Supreme Court issued its decision in Blakely. But after that date, defendant raised the Blakely issue in a supplemental brief on appeal. The Court of Appeals did not directly analyze the issue, stating merely that it disagreed with defendant’s contentions. It relied on dicta contained in our Claypool opinion, treating it as binding precedent. But the Court of Appeals did request this Court to indicate whether it should be bound by the Claypool dicta. People v Drohan, 264 Mich App 77, 89 n 4; 689 NW2d 750 (2004). We granted oral argument on the matter, limited to what effect, if any, the Blakely opinion has on Michigan’s statutory sentencing guidelines. 472 Mich 881 (2005).
DEFENDANT’S SENTENCE DOES NOT INVOLVE AN INTERMEDIATE SANCTION CELL
In his appeal in this Court, defendant claims that the trial court incorrectly scored OVs 4,10, and 12. But it is apparent that, however these OVs were scored, defendant’s sentence would not have fallen within an intermediate sanction cell. With his PRV level of 20 points and an OV level of 25 points,[9] defendant would have fallen into cell C-III, which, for a third-offense habitual offender, provides a range of 36 to 90 months. MCL 777.21(3)(b) and 777.63. A sentencing guidelines cell is an intermediate sanction cell only when the upper limit of the sentencing range is under 18 months. MCL 769.34(4)(a).[10]
*168 Even if defendant’s PRV level were zero, his sentence would not fall within an intermediate sanction cell. Instead, it would fall into cell C-I. For a third-offense habitual offender, cell C-I sets a minimum sentence range of 24 to 60 months. Again, this exceeds the 18-month limit for an intermediate sanction cell. MCL 769.34(4) (a).
The significance of the fact that defendant’s sentence could not fall within an intermediate sanction cell is that the problem that arose in McCuller cannot occur here. The reason is that the guidelines dictate defendant’s minimum sentence only. The judicial findings of fact used to score the challenged OVs did not change defendant’s maximum sentence. As a consequence, no Blakely issue arises.
THE UNITED STATES SUPREME COURT’S PRECEDENT REGARDING THE “STATUTORY MAXIMUM” [11]
In McMillan v Pennsylvania,[12] the Supreme Court addressed the constitutionality of Pennsylvania’s mandatory minimum sentencing act, 42 Pa Cons Stat 9712 (1982). It found that the act did not change the prosecution’s burden of proving guilt beyond a reasonable doubt. McMillan v Pennsylvania, 477 US 79, 86-88; 106 *169 S Ct 2411; 91 L Ed 2d 67 (1986). It was careful to point out, however, that there are constitutional limits on how far a state may go in defining away the facts necessary to prove a criminal offense. Specifically, the Court relied on the fact that the Pennsylvania act did not increase the maximum penalty faced by a defendant. Id. at 87-88.
The Supreme Court expanded on this point in five subsequent cases: Jones v United States,[13] Apprendi v New Jersey,[14] Ring v Arizona,[15] Blakely, and United States v Booker.[16] I refer to these cases as “the Blakely cases.” The Blakely cases focused primarily on the “statutory maximum.” Blakely and Booker made clear that this phrase did not refer to the absolute maximum sentence provided by statute. Instead, the Supreme Court defined the “statutory maximum” as the maximum sentence that can be imposed without any judicial fact-finding:
Our precedents make clear, however, that the “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,” and the judge exceeds his proper authority. [Blakely v Washington, 542 US 296, 303-304; 124 S Ct 2531; 159 L Ed 2d 403 (2004) (emphasis in original; citations omitted).]
*170 The Blakely cases reiterated a central holding:
Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. [United States v Booker, 543 US 220, 244; 125 S Ct 738; 160 L Ed 2d 621 (2005).]
THE DIFFERENCE BETWEEN INTERMEDIATE SANCTION CELLS AND NONINTERMEDIATE SANCTION CELLS
When a defendant is entitled to a sentence falling within an intermediate sanction cell, Michigan’s sentencing guidelines establish the maximum sentence that the defendant may face. MCL 769.34(4)(a). That maximum is either the upper limit of the recommended minimum sentence range or 12 months in jail, whichever period is shorter. Under the guidelines, a trial court is required to impose this maximum sentence unless it articulates substantial and compelling reasons to depart upward. At that point, the sentencing process is no longer focused on the individual’s minimum sentence. The court’s attention centers on the “statutory maximum” discussed in the Blakely cases. This is because the intermediate sanction is the maximum sentence supported by the jury verdict and defendant’s criminal history alone. Blakely holds that any judicial fact-finding that moves a defendant above this “statutory maximum” violates the Sixth Amendment. Booker, 543 US 244; Blakely, 542 US 303-304.
In cases involving nonintermediate sanction cells, such as Joseph Drohan’s case, the sentencing guidelines set the minimum sentence. If the judge engages in judicial fact-finding to increase the minimum sentence, the defendant’s maximum sentence will not be increased. Instead, the “statutory maximum” for Blakely purposes is the maximum sentence set by the criminal *171 statute. The defendant’s criminal history, admissions, and the jury’s verdict alone allow the court to sentence a defendant to the maximum sentence allowed by law, regardless of any subsequent judicial fact-finding. And the defendant’s Sixth Amendment rights are not implicated because all facts needed to support the maximum sentence were admitted by the defendant or proven to a jury beyond a reasonable doubt.
In cases like Drohan’s, judicial fact-finding moves the minimum sentence within the preexisting range rather than increasing the potential maximum sentence. As the Supreme Court noted, this does not violate constitutional rights because “it operates solely to limit the sentencing court’s discretion in selecting a penalty within the range already available to it without the special finding[s.]” McMillan, 477 US 88.
Drohan’s case serves to demonstrate this point of law. Drohan’s criminal history, scored through the PRVs, did not place his sentence in an intermediate sanction cell. Hence, his “statutory maximum” was never an intermediate sanction. Instead, his maximum sentence was the maximum penalty allowed by law, 30 years. The judicial fact-finding necessary to score OVs 4, 10, and 12 did not and could not change his maximum sentence. Therefore, defendant always knew his potential maximum sentence; it was the maximum penalty prescribed by law. Just as in McMillan, adjustments to the minimum sentence create no constitutional problems. Id. at 86-88.
Because Drohan’s sentence does not raise a Sixth Amendment issue, it is constitutionally unobjectionable. Therefore, I concur in the decision to affirm it.
THE INTERMEDIATE SANCTION CELL PROBLEM AND SOLUTION
As shown above, and as I discussed in McCuller, the existence of intermediate sanction cells in Michigan’s *172 sentencing guidelines creates a Blakely problem. The reason is that judicial fact-finding used to score the OVs or to depart from the intermediate sanction cells changes a defendant’s “statutory maximum” sentence. The change in the “statutory maximum” makes the sentence constitutionally infirm. Then, the question must be addressed whether the offending portions of the sentencing guidelines can be severed from the nonoffending portions. Such severance might be possible if the Legislature had intended the sentencing guidelines to function without intermediate sanction cells. But that was not its intention.
I must reiterate my belief, as set forth in McCuller, that the offending sections cannot be severed. Nearly every class of felony involves intermediate sanction cells. In fact, only class A and M2 felonies do not. See MCL 777.61 to 777.69. Nearly evexy single felony could present a Blakely problem if the defendant has the coxrect number of PRV points. The comprehensiveness of the problem creates extreme entanglement.
At the start of any jury trial, the participants will be uncertain which sentencing method will be appropriate if the defendant is convicted. They will not know whether judicial fact-finding will be required or permitted. And the prosecution will be uncertain of the entirety of the facts it must prove to the jury.
Moreover, the offending sections of the sentencing guidelines will be difficult to spot. For one defendant convicted of a crime, it would be appropriate to score the OVs. For another convicted of the same crime, it would be impermissible to score the OVs because that defendant’s PRV level places him or her in an intermediate sanction cell. Such entanglement shows that severance is simply not feasible. Blank v Dep’t of Corrections, 462 Mich 103, 123; 611 NW2d 530 (2000) (opinion by Kelly, J.).
*173 Also, it is unlikely that the Legislature would have enacted a noncomprehensive version of the guidelines. The Legislature intended the guidelines to be comprehensive. People v Garza, 469 Mich 431, 434-435; 670 NW2d 662 (2003). Its specific goals were to eliminate sentencing disparity and ensure that certain crimes not warranting prison time result in jail sentences. Id. at 435. Severing the intermediate sanction cells from the sentencing guidelines would work counter to both goals. This demonstrates that severance is not appropriate. People v McMurchy, 249 Mich 147, 157-159; 228 NW 723 (1930). Given that the offending sections cannot be severed, the guidelines as a whole must be found no longer valid.
However, alternative solutions should be explored. For example, we could replace all judicial fact-finding with juxy determinations. The prosecution could include in its charges the specific facts needed to score relevant OVs. Then, in a bifurcated hearing, the prosecution could present evidence regarding each of them. The jury could deliberate and make specific findings. It could indicate which facts the prosecution had proved beyond a reasonable doubt. Because it would be the jury making the determinations, there would be no constitutional impediment to an OV score moving a defendant’s sentence out of an intermediate sanction cell. See McCuller, 475 Mich 176.
This solution would ensure that the Legislature’s intent in enacting the guidelines would be fulfilled. At the same time, it would allow defendants full Sixth Amendment protection by putting the prosecution to its proofs. Such a system would be compatible with the Blakely cases.
CLAYPOOL HAS NO PRECEDENTIAL VALUE
The Court of Appeals specifically asked us to address whether Claypool’s discussion of Blakely carries any *174 precedential weight. In its decision, the majority implies that it does. I strongly disagree. The discussion of Blakely in Claypool was mere dicta.
Black’s Law Dictionary (7th ed) defines “obiter dictum” as: “A judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential. . ..” The reference to Blakely in Claypool was completely unnecessary to that decision. Blakely had nothing to do with the issue presented in Claypool, which the Court framed as
whether it is permissible for Michigan trial judges, sentencing under the legislative sentencing guidelines pursuant to MCL 769.34, to consider, for the purpose of a downward departure from the guidelines range, police conduct that is described as sentencing manipulation, sentencing entrapment, or sentencing escalation. [People v Claypool, 470 Mich 715, 718; 684 NW2d 278 (2004).]
In fact, the majority opinion in Claypool notes the irrelevance of Blakely to the discussion: “The Chief Justice argues that the United States Supreme Court’s recent decision in Blakely v Washington, 542 US [296]; 124 S Ct 2531; 159 L Ed 2d 403 (2004), affects this case. We disagree.” Id. at 730 n 14.
As I noted at the time, Blakely was neither raised nor addressed by the parties. It was not germane to the discussion. Id. at 748 (KELLY, J. concurring in part and dissenting in part). Given this irrelevance, the discussion clearly falls under the dictionary definition of “dicta.” Such dicta lack the force of an adjudication and are not binding under the principles of stare decisis. People v Borchard-Ruhland, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999). It is erroneous for the majority to indicate that the Blakely discussion in Claypool has any precedential weight.
*175 conclusion
I concur in the majority’s decision that defendant’s sentence does not offend the Sixth Amendment. But I believe that the Michigan sentencing guidelines do contain a constitutional flaw, which emerges whenever OV scores determined by judicial fact-finding remove a defendant from an intermediate sanction cell. Hence, for the reasons stated in my dissenting opinion in McCuller,[17] I would find Michigan’s sentencing guidelines no longer constitutionally sound. Also, the majority’s attempt to treat Claypool’s discussion oí Blakely as precedentially binding is incorrect. Claypool’s analysis of Blakely was simply dicta.
I would affirm defendant’s sentence.

 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004).

 470 Mich 715; 684 NW2d 278 (2004).

 MCL 750.520d(l)(b).

 MCL 750.520e(l)(b).

 MCL 777.34, psychological injury to a victim.

 MCL 777.40, exploitation of a vulnerable victim.

 MCL 777.42, contemporaneous felonious criminal acts.

 MCL 777.43, continuing pattern of criminal behavior. Defendant never objected to the scoring of OV 13. This constitutes an admission that it was properly scored.

 Even if OVs 4, 10, and 12 had been scored at zero, defendant would have had an OV level of 25 because he conceded the scoring of OV 13.

 MCL 769.34(4)(a) provides:
*168 If the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII is 18 months or less, the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

 For a more complete discussion of the case history, please see my dissent in McCuller, 475 Mich 176.

 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986).

 526 US 227; 119 S Ct 1215; 143 L Ed 2d 311 (1999).

 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000).

 536 US 584; 122 S Ct 2428; 153 L Ed 2d 556 (2002).

 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005).

 475 Mich 176.