PEOPLE v LOCKRIDGE

Docket No. 310649. Submitted October 1, 2013, at Detroit. Decided February 13, 2014, at 9:00 a.m. Leave to appeal granted, 496 Mich ___.

An Oakland Circuit Court jury found Rahim O. Lockridge guilty of involuntary manslaughter, MCL 750.321. The recommended minimum sentence range under the sentencing guidelines was 43 to 86 months. The court, Nanci J. Grant, J., sentenced defendant to 8 to 15 years' imprisonment, reflecting a 10-month upward departure from the recommended range for the minimum sentence. The court articulated the following reasons for the departure: (1) defendant (who had children with the victim) violated court orders regarding contact with her, (2) the sentencing guidelines did not reflect the extent of defendant's prior altercations with the victim, (3) defendant killed the victim in the presence of their children and then left the residence while the children attempted to revive her, and (4) during and after the offense, defendant showed no concern for the children's physical or emotional well-being. Defendant appealed.

In separate opinions, the Court of Appeals *held*:

1. *Alleyne v United States*, 570 US ___; 133 S Ct 2151 (2013), held that any fact that increases the mandatory minimum sentence is an element that must be submitted to the jury or admitted by the defendant. *People v Herron*, 303 Mich App 392 (2013), subsequently rejected the argument that under *Alleyne*, the judicial fact-finding required by the Michigan sentencing guidelines to determine the minimum term of an indeterminate sentence violated the Sixth and Fourteenth Amendments. *Herron* was binding on subsequent panels under MCR 7.215(J)(1).

2. The trial court did not abuse its discretion by departing upward from the guidelines recommendation, and defendant is not entitled to resentencing.

3. A remand to the trial court is necessary for the ministerial task of correcting an error remaining in the presentence investigation report

Sentence affirmed and case remanded.

O'CONNELL, J., wrote the lead opinion and concluded that the trial court's reasons for the departure were objective and verifiable. Considering the exceptional nature of the crime, the reasons stated keenly and irresistibly grabbed the panel's attention in support of the upward departure. Moreover, while the prior record and offense variables accounted for defendant's past criminal record and the psychological injury to the victim's family, given the unique circumstances at hand, the trial court did not err by finding that those variables inadequately accounted for defendant's conduct. Judge O'CONNELL also concluded that he was bound to follow *Herron* and declined to address the argument based on it.

BECKERING, P.J., concurring, agreed that under *Herron* defendant was not entitled to resentencing but also concluded that *Herron* was wrongly decided. United States Supreme Court precedent dictated that the guidelines range within which a sentencing court in Michigan must fix a minimum term of imprisonment is itself a legally prescribed mandatory minimum. Further, the mandatory minimum permissible for purposes of *Alleyne* is the guidelines range determined solely on the basis of a defendant's criminal history and the facts reflected in the jury's verdict or admitted by the defendant. Michigan's sentencing scheme requires a trial court to engage in fact-finding by scoring the offense variables to determine the applicable guidelines range for a minimum sentence. Because of this, facts that are neither found by a jury nor admitted by a defendant increase the minimum term of imprisonment to which a defendant is exposed and, thus, the penalty. *Alleyne* prohibited this and therefore rendered Michigan's indeterminate sentencing scheme unconstitutional. Earlier Michigan decisions that held that the state's sentencing scheme was constitutionally sound were made without the benefit of the *Alleyne* Court's ruling that any fact that increases the mandatory minimum is an element that must be submitted to the jury. While Judge BECKERING agreed with Judge SHAPIRO that the upper end of the recommended minimum sentence range has no bearing on the maximum term of imprisonment to be imposed, she disagreed with his view that only the bottom of the minimum sentence range presents an *Alleyne* Sixth Amendment problem. Fact-finding to score the guidelines increases both the floor and the ceiling of the sentencing range, and an increase of the ceiling enhances the maximum minimum sentence a court can impose. This increases the penalty because both the floor and ceiling of sentence ranges define the legally prescribed penalty. To remedy the constitutional defect, Judge BECKERING

would have made the Michigan sentencing guidelines advisory, as the United States Supreme Court did for the federal sentencing guidelines.

SHAPIRO, J., concurring, agreed with the lead opinion that the trial court did not abuse its discretion by departing upward from the guidelines recommendation and further agreed with Judge BECKERING that the analysis in *Herron* did not comport with *Alleyne*, which explicitly barred judicial fact-finding that results in an increased mandatory minimum sentence, i.e., a sentencing floor, regardless of whether that mandatory minimum is defined within the statutory offense or by applicable statutory sentencing guidelines. Courts retain broad discretion to impose a minimum sentence within the limits fixed by law, but *Alleyne* made it clear that a trial court does not have the authority to set those limits with its own fact-finding. Judge SHAPIRO also agreed with Judge BECKERING that the upper end of the Michigan guidelines constitutes a maximum minimum sentence, but no case has established that category as being of Sixth Amendment import. It has no relevancy to the maximum term of imprisonment and, while it limits a court's ability to sentence above a certain minimum term, it does not trigger a constitutional issue. He therefore disagreed with Judge BECKERING that *Alleyne* rendered the entirety of the Michigan sentencing guidelines constitutionally infirm. Only the bottom of the minimum sentence range presents an *Alleyne* problem. The top of a given guidelines range does not set a mandatory minimum, and setting it through judicial fact-finding therefore presents no constitutional impropriety. Contrary to Judge BECKERING's view, only the lower end of the guidelines range need be advisory. Trial courts could continue to score the guidelines using findings made by a preponderance of the evidence standard, upper limits of the guidelines would remain mandatory, upward departures would be permitted only when there are substantial and compelling reasons for them, and downward departures from the lower end of a range would be subject to appellate review for reasonableness.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden*, Chief, Appellate Division, and *Danielle Walton*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for defendant.

Before: BECKERING, P.J., and O'CONNELL and SHAPIRO, JJ.

O'CONNELL, J. Defendant appeals as of right his sentence of 8 to 15 years' imprisonment for his jury-based conviction of involuntary manslaughter, MCL 750.321. We affirm defendant's sentence, but remand the case to the trial court for the ministerial task of correcting the presentence investigation report (PSIR).

Defendant first argues that the trial court abused its discretion by imposing a 10-month upward departure from the sentencing guidelines. Defendant maintains that the guidelines adequately accounted for his conduct and that the trial court failed to articulate a substantial and compelling reason for the departure. We review for abuse of discretion the trial court's conclusion that there was a substantial and compelling reason to depart from the guidelines. *People v Hardy*, 494 Mich 430, 438 n 17; 835 NW2d 340 (2013). A trial court " 'may depart from the appropriate sentence range established under the sentencing guidelines set forth in MCL [777.1 *et seq.*] if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure.' " *People v Babcock*, 469 Mich 247, 256; 666 NW2d 231 (2003), quoting MCL 769.34(3) (alteration in original). A substantial and compelling reason must be based on objective and verifiable factors. *People v Horn*, 279 Mich App 31, 43; 755 NW2d 212 (2008). "To be objective and verifiable, a reason must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed." *Id.* at 43 n 6. "The reasons for departure must also be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *People v Anderson*, 298 Mich App

178, 183; 825 NW2d 678 (2012) (quotation marks and citation omitted). Further, as intended by the Legislature, a substantial and compelling reason exists only in exceptional cases. *Babcock*, 469 Mich at 257. Lastly, the "departure must be proportionate to the defendant's conduct and criminal history. The trial court must justify the particular departure it made by explaining why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *People v Portellos*, 298 Mich App 431, 453; 827 NW2d 725 (2012) (quotation marks and citations omitted).

Defendant's 8-year minimum term of imprisonment is an upward departure from the recommended sentencing guidelines range of 43 to 86 months. The trial court articulated the following reasons for the departure: (1) that defendant had violated court orders regarding contact with the victim, (2) that the sentencing guidelines did not reflect the extent of defendant's prior altercations with the victim, (3) that defendant killed the victim in the presence of their children, and then left the residence while the children attempted to revive the victim, and (4) that during and after the offense, defendant showed no concern for the physical or emotional well-being of the children.

This Court has previously concluded that the psychological injury suffered by the victim's family members, the demonstration of escalating violence toward the victim, and the existence of a probation violation constitute objective and verifiable reasons to depart from the guidelines. See, e.g., *People v Corrin*, 489 Mich 855 (2011); *Horn*, 279 Mich App at 48; *People v Schaafsma*, 267 Mich App 184, 185-186; 704 NW2d 115 (2005). The trial court's reasons for the departure are objective and verifiable. Further, considering the exceptional nature

of the crime, the trial court's stated reasons keenly and irresistibly grab this Court's attention in support of the upward departure.

Defendant argues that his conduct has been adequately accounted for by the sentencing guidelines. In departing from the sentencing guidelines, a trial court may "not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range *unless* the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b) (emphasis added). While prior record and offense variables may account for defendant's past criminal record and the psychological injury to the victim's family, given the unique circumstances at hand, the escalation of the domestic-violence conduct toward the victim, the fact that the crime occurred in plain view of the children, and that defendant left his children alone with the trauma of attempting to revive their mother, the trial court did not err by finding that the prior record and offense variables inadequately accounted for defendant's conduct.

Defendant also argues that the trial court based its departure on improper factors, i.e., defendant's gender and a belief that defendant was guilty of the greater offense of second-degree murder. A trial court may not base a departure on a defendant's gender or make an independent finding regarding whether a defendant is guilty of another offense and justify the departure on that basis. MCL 769.34(3)(a); *People v Glover*, 154 Mich App 22, 45; 397 NW2d 199 (1986), overruled in part on other grounds by *People v Hawthorne*, 474 Mich 174; 713 NW2d 724 (2006). While the trial court discussed

the jury's verdict, the trial court's comments did not suggest or reveal an intention to base the departure on a perceived belief that the jury was wrong. Moreover, a review of the record does not suggest that the trial court departed from the guidelines because of defendant's gender. Indeed, the trial judge shared her opinion regarding domestic violence cases but, again, those comments do not suggest or reveal an intention to depart on that basis. Accordingly, the trial court did not abuse its discretion by departing upward from the sentencing guidelines range.

In a supplemental brief, defendant argues that the trial court engaged in judicial fact-finding, which, according to defendant, violated the new rule in *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). This Court recently held that the decision in *Alleyne* does not implicate Michigan's sentencing scheme. See *People v Herron*, 303 Mich App 392; 845 NW2d 533 (2013). This Court is bound to follow *Herron*, and accordingly, I decline to address the argument in defendant's supplemental brief.

At sentencing, defendant challenged the accuracy of the information in the PSIR, and the trial court agreed to make four corrections to the report. The PSIR has been amended and all but one of the changes has been made. Specifically, the PSIR still contains the following sentence: "[K.L.] told the police that her father was choking her mother in the master bedroom upstairs." Therefore, this Court remands for the ministerial task of making the correction to the PSIR and orders the trial court to transmit a corrected copy of the report to the Department of Corrections. See *People v Martinez (After Remand)*, 210 Mich App 199, 203; 532 NW2d 863 (1995), overruling on other grounds recognized by *People v Edgett*, 220 Mich App 686, 692-694; 560 NW2d 360 (1996).

We affirm defendant's sentence, but remand for the ministerial task of correcting the PSIR. We do not retain jurisdiction.

BECKERING, P.J. (*concurring*). I concur with the result reached by my colleagues that defendant is not entitled to resentencing. I am required to reach this conclusion, in part, by this Court's recent decision in *People v Herron*, 303 Mich App 392; 845 NW2d 533 (2013). In *Herron*, this Court rejected the defendant's argument that on the basis of *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), judicial fact-finding required by Michigan's sentencing guidelines to determine a minimum term of an indeterminate sentence violates the Sixth and Fourteenth Amendments of the United States Constitution. *Herron*, 303 Mich App at 399-405. *Herron* is binding on this Court and must be followed in this case. See MCR 7.215(J)(1).

I write separately because I disagree with this Court's holding in *Herron*. In *Alleyne*, 570 US at ___; 133 S Ct at 2155, the United States Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." Precedent from the United States Supreme Court dictates that the guidelines range within which a trial court in Michigan is required to fix a minimum term of imprisonment is itself a legally prescribed mandatory minimum. Further, the mandatory minimum permissible for purposes of *Alleyne* is the guidelines range determined solely on the basis of a defendant's criminal history and the facts reflected in the jury's verdict or admitted by the defendant. Because Michigan's sentencing scheme requires trial courts to engage in fact-finding to determine the guidelines range within which the court must fix a minimum term of imprisonment, facts that are neither found by a jury nor admitted by a

defendant increase, by law, the minimum term of imprisonment to which a defendant is exposed and, thus, the penalty. *Alleyne* prohibits this and, therefore, renders Michigan's indeterminate sentencing scheme unconstitutional. See *Alleyne*, 570 US at ___; 133 S Ct at 2155, 2160-2162. As a remedy, I would make the sentencing guidelines in Michigan advisory as the United States Supreme Court did with the federal sentencing guidelines in *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005).

### I. *APPRENDI* v *NEW JERSEY* AND ITS PROGENY

#### A. *APPRENDI*

In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court announced the now well-established rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The defendant in *Apprendi* pleaded guilty to, among other things, one count of second-degree possession of a firearm for an unlawful purpose, which by statute was punishable by imprisonment for "between five years and 10 years." *Id*. at 468 (quotation marks and citation omitted). However, the state of New Jersey's statutory "hate crime" law provided for an extended term of imprisonment of between 10 and 20 years for second-degree offenses if the trial court found by a preponderance of the evidence that the defendant "in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." *Id*. at 468-469 (quotation marks and citation omitted). At an evidentiary hearing held after the defen-

dant's plea, the trial court found by a preponderance of the evidence that the defendant had acted with a purpose to intimidate as provided by the hate-crime statute; thus, the court applied the hate-crime enhancement to sentence the defendant to a 12-year term of imprisonment for the possession conviction. *Id.* at 471.

The United States Supreme Court held that New Jersey's practice of enhancing a defendant's sentence on the basis of judicial fact-finding under the hate-crime statute was unconstitutional. *Id.* at 491-492, 497. The Court explained that except for the fact of a prior conviction, it " 'is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " *Id.* at 490, quoting *Jones v United States*, 526 US 227, 252-253; 119 S Ct 1215; 143 L Ed 2d 311 (1999) (Stevens, J., concurring). The Court opined that the fact of intimidation contained in the hate-crime statute was "the functional equivalent of an element of a greater offense" than the offense the defendant pleaded guilty to. See *Apprendi*, 530 US at 494 n 19. The Court emphasized that "merely because the state legislature placed its hate crime sentence enhancer within the sentencing provisions of the criminal code does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense." *Id.* at 495 (quotation marks and citation omitted). The Court distinguished "sentencing factors" from "elements," explaining that sentencing factors are "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense." *Id.* at 494 n 19. The Court stressed that it is permissible "for

judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.* at 481.

### B. *HARRIS*

In *Harris v United States*, 536 US 545, 555, 568; 122 S Ct 2406; 153 L Ed 2d 524 (2002), the Supreme Court distinguished facts increasing a defendant's mandatory minimum sentence from facts extending a sentence beyond the statutory maximum; the Court limited the application of *Apprendi* to factual findings that increase the statutory maximum sentence. The trial court in *Harris* found the defendant guilty of violating various federal drug and firearms laws after he sold illegal narcotics out of his pawnshop with an unconcealed semiautomatic pistol at his side. *Id.* at 550. One of the various statutes under which the defendant was convicted, 18 USC 924(c)(1)(A), provided as follows:

> "[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> "(i) be sentenced to a term of imprisonment of not less than 5 years;
>
> "(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> "(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." [*Harris*, 536 US at 550-551, quoting 18 USC 924(c)(1)(A)(i) to (iii).]

Although the indictment did not mention brandishing or Subpart (ii), the trial court at the defendant's sentencing hearing found by a preponderance of the evi-

dence that the defendant had brandished a firearm, so the court sentenced the defendant to seven years' imprisonment. *Id.* at 551.

The Supreme Court upheld the defendant's sentence, concluding as follows: "[A]s a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense. The statute regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Id.* at 556. In upholding the defendant's sentence, the Court reaffirmed its prior decision in *McMillan v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986), in which the Court "sustained a statute that increased the minimum penalty for a crime, though not beyond the statutory maximum, when the sentencing judge found, by a preponderance of the evidence, that the defendant had possessed a firearm." *Id.* at 550, 568.

### C. *BLAKELY*

In *Blakely v Washington*, 542 US 296, 303; 124 S Ct 2531; 159 L Ed 2d 403 (2004), the Supreme Court clarified the "statutory maximum" for *Apprendi* purposes, explaining that it is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" The defendant had pleaded guilty to second-degree kidnapping, a class B felony, involving domestic violence and use of a firearm. *Id.* at 298-299. Washington law provided for a maximum sentence of 120 months' imprisonment for a class B felony. *Id.* at 299. Significantly, Washington's Sentencing Reform Act further limited the range of the sentence for the defendant's conviction of second-degree kidnapping with a firearm, providing a "standard range" of 49 to 53 months' imprisonment. *Id.* However, the act also permitted a judge to "impose a

sentence above the standard range if he finds 'substantial and compelling reasons justifying an exceptional sentence' "; the act provided an illustrative list of aggravating factors, but an exceptional sentence could not be justified on the basis of a factor already considered when computing the standard range. *Id.* The trial court in *Blakely* sentenced the defendant to 90 months' imprisonment, 37 months more than the upper end of the standard range, after finding that the defendant had acted with "deliberate cruelty," which was a statutorily enumerated ground for departure. *Id.* at 300.

The Supreme Court held that the state of Washington's sentencing procedure violated the Sixth Amendment and that the defendant's sentence was invalid. *Id.* at 305. The Court rejected the state's argument that there was no *Apprendi* violation because the statutory maximum was 10 years for class B felonies, explaining that the "statutory maximum" for *Apprendi* purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id.* at 303. The Court emphasized that the trial court did not have the authority to impose the exceptional 90-month sentence because a finding of deliberate cruelty was neither made by a jury nor admitted by the defendant. See *id.* at 304. The law only allowed a maximum sentence of 53 months' imprisonment for the crime to which the defendant confessed. See *id.* at 303, 313.

### D. *BOOKER*

In *Booker*, 543 US at 226, the Supreme Court, in two separate opinions, held that the Sixth Amendment as construed in *Apprendi* and *Blakely* applies to the federal sentencing guidelines and, to ensure the guidelines' compliance with the Sixth Amendment, invali-

dated two provisions of the federal Sentencing Reform Act of 1984 that effectively made the guidelines mandatory. Booker was charged with possession with intent to distribute at least 50 grams of crack cocaine. *Id.* at 227. After evidence was presented at trial that Booker possessed 92.5 grams of crack, a jury convicted him of violating 21 USC 841(a)(1), which provided for a minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment. Solely on the basis of the facts found by the jury and Booker's criminal history, the federal sentencing guidelines provided a "base" sentence of "not less than 210 nor more than 262 months in prison." However, the trial court held a posttrial sentencing hearing and found by a preponderance of the evidence that Booker had both possessed an additional 566 grams of crack and obstructed justice. Mandatory application of the sentencing guidelines using these judicially found facts required the trial court to select a sentence between 360 months and life imprisonment; the court sentenced Booker to 30 years' (i.e., 360 months') imprisonment. *Id.* The United States Court of Appeals for the Seventh Circuit held that Booker's sentence violated the Sixth Amendment and remanded for the trial court to either sentence Booker within the sentencing range supported by the jury's findings or hold a separate sentencing hearing before a jury. *Id.* at 228.

The Supreme Court affirmed and remanded the case, instructing the trial court to impose a sentence in accordance with its opinion. *Id.* at 267. The Court reaffirmed its holding in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244. The

Court held that *Apprendi* and its progeny applied to the federal sentencing guidelines, opining that there was not a distinction of constitutional significance between the federal sentencing guidelines and the state of Washington's procedures at issue in *Blakely*—both systems were mandatory and imposed binding requirements on sentencing courts.[1] *Id.* at 229, 233. The Court explained that "just as in *Blakely*, 'the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.' " *Id.* at 235, quoting *Blakely*, 542 US at 305. Specifically with respect to Booker's sentence, the Court opined:

> The jury convicted him of possessing at least 50 grams of crack in violation of 21 U.S.C. §841(b)(1)(A)(iii) based on evidence that he had 92.5 grams of crack in his duffel bag. Under these facts, the Guidelines specified an offense level of 32, which, given the defendant's criminal history category, authorized a sentence of 210-to-262 months. See USSG §2D1.1(c)(4). Booker's is a run-of-the-mill drug case, and does not present any factors that were inadequately considered by the Commission. The sentencing judge would therefore have been reversed had he not imposed a sentence within the level 32 Guidelines range.
>
> Booker's actual sentence, however, was 360 months, almost 10 years longer than the Guidelines range supported by the jury verdict alone. To reach this sentence, the judge found facts beyond those found by the jury: namely, that Booker possessed 566 grams of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity, and the judge found it true by a preponderance of the evidence. Thus, just

---

[1] Subsection (a) of the sentencing statute, 18 USC 3553, listed the sentencing guidelines as one factor to consider when imposing a sentence, but subsection (b) provided that "the court '*shall* impose a sentence of the kind, and within the range' established by the Guidelines, subject to departures in specific limited cases." *Booker*, 543 US at 233-234, quoting 18 USC 3553(b).

as in *Blakely*, the jury's verdict alone does not authorize the sentence. [*Id.* at 235 (quotation marks and citation omitted).]

The Court opined that if the federal sentencing guidelines could be read as advisory provisions recommending, rather than requiring, the selection of a particular sentence in response to a set of particular facts, use of the guidelines would not implicate the Sixth Amendment. *Id.* at 233. In such a case, a sentencing court would be exercising discretion to impose a sentence within a statutory range. See *id.* "[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.* The Supreme Court explained that the availability of a departure from the guidelines range did not foreclose an *Apprendi* violation:

> The availability of a departure in specified circumstances does not avoid the constitutional issue, just as it did not in *Blakely* itself. The Guidelines permit departures from the prescribed sentencing range in cases in which the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. Were this the case, there would be no *Apprendi* problem. Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range. [*Id.* at 234 (citation omitted).]

As a remedy to ensure the guidelines' compliance with the Sixth Amendment, the Supreme Court severed and excised two provisions from the sentencing act: the provision requiring sentencing courts to impose a sentence within the applicable guidelines range (in the absence of circumstances justifying a departure), 18 USC 3553(b)(1), and the provision setting standards of review on appeal, 18 USC 3742(e). *Id.* at 245, 259, 265. The Court opined that without these two provisions, the remainder of the federal sentencing act satisfied constitutional requirements. *Id.* at 259. The Court stated that trial courts, "while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264. In the future, appellate courts would review sentencing decisions for unreasonableness. *Id.* The Court opined that the advisory nature of the sentencing guidelines, "while not the system Congress enacted, nonetheless continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id.* at 264-265.

### E. *ALLEYNE*

In *Alleyne*, 570 US at ___; 133 S Ct at 2155, the Supreme Court overruled *Harris* and held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury." Just as in *Harris*, *Alleyne* involved a defendant convicted of using or carrying a firearm in relation to a crime of violence, 18 USC 924(c)(1)(A), which provided for a mandatory minimum sentence of five years under Subpart (i) but a mandatory minimum sentence of seven years under Subpart (ii) if the firearm was brandished. Although the jury's verdict form did not indicate a

finding that the defendant had brandished a firearm, the trial court found by a preponderance of the evidence that the firearm was brandished. The court concluded that brandishing was a sentencing factor under *Harris* and sentenced the defendant to seven years' imprisonment. *Id.* at ___; 133 S Ct at 2155-2156.

The Supreme Court held that imposing a sentence on the basis of the court's finding of brandishing violated the defendant's Sixth Amendment rights. *Id.* at ___; 133 S Ct at 2163-2164. In so holding, the Court reaffirmed the rule of *Apprendi*: "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at ___; 133 S Ct at 2155. The Court concluded that "[w]hile *Harris* limited *Apprendi* to facts increasing the statutory maximum, the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum." *Id.* at ___; 133 S Ct at 2160. The Court explained the basis for this conclusion as follows:

> It is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. . . . And because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense.
>
> It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty. . . . A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.
>
> Moreover, it is impossible to dispute that facts increasing the legally prescribed floor *aggravate* the punishment.

Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's expected punishment has increased as a result of the narrowed range and the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish. . . .

\* \* \*

In adopting a contrary conclusion, *Harris* relied on the fact that the 7–year minimum sentence could have been imposed with or without a judicial finding of brandishing, because the jury's finding already authorized a sentence of five years to life. The dissent repeats this argument today. While undoubtedly true, this fact is beside the point.

As noted, the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. [*Id.* at ___; 133 S Ct at 2160-2162 (quotation marks and citations omitted).]

The Court took care to distinguish judicial factfinding that "both alters the legally prescribed range *and* does so in a way that aggravates the penalty" from "factfinding used to guide judicial discretion in selecting a punishment 'within limits fixed by law.' " *Id.* at ___ n 2; 133 S Ct at 2161 n 2, quoting *Williams v New York*, 337 US 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949). The Court emphasized:

Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, *e.g.*, *Dillon v. United States*, 560 U. S. [817, 828-829; 130 S Ct 2683; 177 L Ed 2d 271

(2010)] ("[W]ithin established limits[,] . . . the exercise
of [sentencing] discretion does not contravene the Sixth
Amendment even if it is informed by judge-found facts"
(emphasis deleted and internal quotation marks omit-
ted)); *Apprendi*, 530 U. S., at 481 ("[N]othing in this
history suggests that it is impermissible for judges to
exercise discretion—taking into consideration various
factors relating both to offense and offender—in impos-
ing a judgment *within the range* prescribed by stat-
ute"). . . . "[E]stablishing what punishment is available
by law and setting a specific punishment within the
bounds that the law has prescribed are two different
things." *Apprendi*, [530 US] at 519 (THOMAS, J., concur-
ring). Our decision today is wholly consistent with the
broad discretion of judges to select a sentence within the
range authorized by law. [*Alleyne*, 570 US at ___; 133 S
Ct at 2163 (alterations in original except those related to
citations).]

Applying these principles to the case before it, the
Court concluded that the defendant's Sixth Amend-
ment rights had been violated. *Id.* at ___; 133 S Ct at
2163-2164. The Court explained that "the sentencing
range supported by the jury's verdict was five years'
imprisonment to life." *Id.* at ___; 133 S Ct at 2163. The
trial court's imposition of the seven-year mandatory
minimum sentence on the basis of its finding of bran-
dishing "increased the penalty to which the defendant
was subjected"; thus, the fact of brandishing was an
element that had to be found by the jury beyond a
reasonable doubt. *Id.* at ___; 133 S Ct at 2163. The
Court remanded the case for resentencing consistent
with the jury's verdict. *Id.* at ___; 133 S Ct at 2164.

## II. MICHIGAN'S SENTENCING SCHEME

"Michigan has an indeterminate sentencing
scheme." *People v McCuller*, 479 Mich 672, 683; 739
NW2d 563 (2007). "[I]n all but a few cases, a sentence

imposed in Michigan is an indeterminate sentence."[2]
*People v Drohan*, 475 Mich 140, 161; 715 NW2d 778
(2006). In other words, a defendant is given a sentence
with a minimum and a maximum. *People v Claypool*,
470 Mich 715, 730 n 14; 684 NW2d 278 (2004). "The
maximum sentence is not determined by the trial court,
but rather is set by law." *Drohan*, 475 Mich at 161; see
also MCL 769.8(1). "Michigan's sentencing laws clearly
require that the maximum portion of every indetermi-
nate sentence be no less than the 'maximum penalty
provided by law . . . . ' " *People v Harper*, 479 Mich 599,
621-622; 739 NW2d 523 (2007), quoting MCL 769.8(1).
A trial court is prohibited from imposing a sentence
that is greater than the statutory maximum.[3] *Drohan*,
475 Mich at 161. Michigan's sentencing guidelines
create a range within which the sentencing court
*must* set the *minimum* sentence. *McCuller*, 479 Mich
at 683; see also MCL 769.8; MCL 769.34(2). The
sentencing court determines the range by considering
together "the defendant's record of prior convictions
(the [prior record variable] score), the facts surround-
ing his crime (the [offense variable] score), and the
legislatively designated offense class." *Harper*, 479
Mich at 616; see also MCL 777.21(1). "Generally, once
the sentencing court calculates the defendant's

---

[2] Determinate sentences are required for first-degree murder, MCL
750.316 (life in prison without the possibility of parole), and carrying or
possessing a firearm when committing or attempting to commit a felony,
MCL 750.227b(1) (two years in prison for the first conviction, five years
for the second conviction, and ten years for a third or subsequent
conviction). See also *McCuller*, 479 Mich at 683 n 9.

[3] "[T]he statutory maximum sentence is subject to enhancement based
on Michigan's habitual offender act, MCL 769.12." *Drohan*, 475 Mich at
161 n 13. "Thus, the statutory maximum sentence of a defendant who is
convicted of being an habitual offender is as provided in the habitual
offender statute, rather than the statute he or she was convicted of
offending." *Id.*

guidelines range, it must . . . impose a minimum sentence within that range." *McCuller*, 479 Mich at 684-685, citing MCL 769.34(2).

A court may depart from the appropriate guidelines minimum sentence range if it has "a substantial and compelling reason for that departure and states on the record the reasons for departure." MCL 769.34(3). A court is prohibited from departing on the basis of "an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b). "[T]he Legislature intended 'substantial and compelling reasons' to exist only in exceptional cases." *People v Fields*, 448 Mich 58, 68; 528 NW2d 176 (1995) (analyzing similar language in the context of departures from minimum sentences for certain drug crimes). The guidelines provide that a "court shall not impose a minimum sentence, including a departure, that exceeds $2/3$ of the statutory maximum sentence." MCL 769.34(2)(b). "While the sentencing judge fixes the minimum portion of a defendant's indeterminate sentence, a defendant is still liable to serve his maximum sentence and may only be released before the maximum term has expired at the discretion of the parole board." *Harper*, 479 Mich at 613.

In several cases decided before the United States Supreme Court's decision in *Alleyne*, the Michigan Supreme Court addressed the effect of *Apprendi* and its progeny on Michigan's indeterminate sentencing system. First in *Claypool*, the Court stated in a footnote that the holding in *Blakely* does not affect Michigan's indeterminate sentencing system. *Claypool*, 470 Mich at 730 n 14. The *Claypool* Court explained that *Blakely*

involved a determinate sentencing system and that the *Blakely* Court made clear that its decision "did not affect indeterminate sentencing systems." *Id.*

Later, in *Drohan*, the Court reaffirmed its statement in *Claypool* that " 'the Michigan system is unaffected by the holding in *Blakely* that was designed to protect the defendant from a higher sentence based on facts not found by the jury in violation of the Sixth Amendment.' " *Drohan*, 475 Mich at 164, quoting *Claypool*, 470 Mich at 730 n 14. In holding that this state's indeterminate sentencing scheme does not violate the Sixth Amendment, the *Drohan* Court, relying on *Blakely*, explained that "a defendant does not have a right to anything less than the maximum sentence authorized by the jury's verdict . . . ." *Drohan*, 475 Mich at 159, citing *Blakely*, 542 US at 308-309. "Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict." *Drohan*, 475 Mich at 162. The Court emphasized that

> the maximum sentence that a trial court may impose on the basis of the jury's verdict is the statutory maximum. . . . As long as the defendant receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict. [*Id.* at 164.]

Finally in *McCuller* and *Harper*, the Court reaffirmed its holding in *Drohan* that Michigan's indeterminate sentencing scheme is valid under *Blakely*. *McCuller*, 479 Mich at 683; *Harper*, 479 Mich at 615. In *McCuller*, the Court explained that

> [u]pon conviction, a defendant is legally entitled only to the statutory maximum sentence for the crime involved. A defendant has no legal right to expect any lesser *maximum*

> sentence. . . . Thus, a sentencing court does not violate
> *Blakely* principles by engaging in judicial fact-finding to
> score the [offense variables] to calculate the recommended
> *minimum* sentence range . . . . The sentencing court's fac-
> tual findings do not elevate the defendant's maximum
> sentence, but merely determine the defendant's recom-
> mended minimum sentence range . . . . [*McCuller*, 479
> Mich at 689-690.]

Additionally, the Supreme Court held that an interme-
diate sanction[4] is not a maximum sentence governed by
*Blakely* for which the facts supporting a departure must
be found by a jury beyond a reasonable doubt or
admitted by the defendant. *Harper*, 479 Mich at 603.
Rather, it is a conditional limit on incarceration and a
"matter of legislative leniency, giving a defendant the
opportunity to be incarcerated for a period that is *less*
than that authorized by the jury verdict or the guilty
plea, a circumstance that does not implicate *Blakely*."
*Id.* at 603-604; see also *McCuller*, 479 Mich at 677-678.

These decisions of our Supreme Court addressing the
effect of *Apprendi* and its progeny on Michigan's inde-
terminate sentencing system predate *Alleyne*. As such,
the Court's holdings that this state's sentencing scheme
is constitutionally sound was made without the benefit
of the *Alleyne* Court's ruling that "any fact that in-
creases the mandatory minimum is an 'element' that
must be submitted to the jury." *Alleyne*, 570 US at ___;
133 S Ct at 2155. Instead, the basis for the Court's
decision was limited to *Harris*—now overruled by

---

[4] "If the upper limit of the minimum sentence range is 18 months or
less, . . . the cell [of the sentencing grid] containing the range is an
'intermediate sanction cell.' " *Harper*, 479 Mich at 617. "A defendant
falling within an intermediate sanction cell must be sentenced, absent a
substantial and compelling reason for departure, to an intermediate
sanction that does not include a prison term." *McCuller*, 479 Mich at 676
n 1, citing MCL 769.34(4)(a).

*Alleyne*—and *Blakely*, which together stood for the principle that a sentencing court does not run afoul of the Constitution by engaging in fact-finding to determine the minimum term of a defendant's indeterminate sentence unless the fact-finding increases the statutory maximum sentence to which the defendant had a legal right. *McCuller*, 479 Mich at 682 & n 8. Because *Alleyne* now requires a court to consider whether judicial fact-finding increases a legally prescribed minimum sentence, as opposed to looking solely to whether that fact-finding increases the legally prescribed maximum, to assess the validity of a sentencing scheme, a reassessment of the validity of Michigan's indeterminate sentencing system is necessary, despite our Supreme Court's previous decisions addressing the effect of *Apprendi* and its progeny on Michigan's scheme.

### III. *HERRON* AND THE EFFECT OF *ALLEYNE* ON MICHIGAN'S SENTENCING SCHEME

Recently in *Herron*, a panel of this Court held that the judicial fact-finding required by Michigan's sentencing scheme for the determination of the minimum term of an indeterminate sentence range does not violate the Sixth and Fourteenth Amendments of the United States Constitution. *Herron*, 303 Mich App at 399-405. The *Herron* panel reached its conclusion primarily on three grounds, none of which justified the panel's holding.

First, the panel opined that "[t]he statutes defendant was convicted of violating do not provide for a *mandatory minimum* sentence on the basis of any judicial fact-finding." *Id.* at 403. Although true, the panel's identification of this fact that distinguishes *Herron* from *Alleyne* is constitutionally insignificant in light of *Blakely* and *Booker*. Both *Blakely* and *Booker* involved

statutes that imposed maximum sentences for the crimes for which the defendants were convicted: 120 months' imprisonment in *Blakely* and life imprisonment in *Booker*. But the Supreme Court in those cases did not view these as the statutory maximums for *Apprendi* purposes; instead, the Court focused on the maximum sentence that the law would allow in each case solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant. In both cases, the relevant statutory maximum was dictated by the application of statutory guidelines to determine a sentence range: a "standard range" of 49 to 53 months solely on the basis of the facts admitted by the defendant in *Blakely* and a "base" federal guidelines range of 210 to 262 months solely on the basis of the facts found by the jury and the defendant's criminal history in *Booker*. In *Blakely*, the Court held that it was unconstitutional to depart from the standard range and impose a sentence greater than 53 months, i.e., the maximum sentence permitted by law under *Apprendi* on the basis of judicial fact-finding. Similarly in *Booker*, the Court held that although required by the mandatory application of the federal sentencing guidelines, it was unconstitutional to use judicially found facts to score the guidelines and, thus, come to a sentence range not supported by the jury verdict alone. As in *Blakely* and *Booker*, Michigan's sentencing scheme provides for the mandatory application of statutory guidelines to determine a sentence range, within which a sentencing court is required to fix a sentence. As can be gleaned from *Blakely* and *Booker*, the essential constitutional inquiry is not whether a statute the defendant has been convicted of violating contains a maximum or minimum sentence but, rather, how statutorily required judicial fact-finding is being used in relation to the application of sentencing guidelines.

Second, the *Herron* panel emphasized that "judicial fact-finding in scoring the sentencing guidelines . . . does not establish a *mandatory minimum*[.]" *Herron*, 303 Mich App at 403-404. In light of *Blakely* and *Booker*, I must disagree. Again, the *Blakely* Court concluded that the statutory maximum permitted by law under *Apprendi* in the case before it was 53 months—the ceiling of the standard range of 49 to 53 months determined through the application of the sentencing guidelines solely on the basis of the facts admitted by the defendant. In *Booker*, the Court determined that the maximum sentence authorized by law for *Apprendi* purposes was the ceiling of the sentence range authorized by the federal sentencing guidelines solely on the basis of the facts found by the jury and Booker's criminal history: 262 months' imprisonment. As in *Blakely* and *Booker*, the sentencing guidelines in Michigan create a range within which the sentencing court must fix a sentence. The sentence that must be fixed is the minimum sentence. Thus, Michigan's sentencing guidelines establish a mandatory minimum sentence. The mandatory minimum is the guidelines range itself because the range is a sentencing range prescribed by law within which a sentencing court is required to fix a minimum sentence.

Admittedly, the nature of the floor and the ceiling of the guidelines range under Michigan's sentencing scheme differs from those at issue in *Blakely* and *Booker*. In *Blakely* and *Booker*, the floor of the guidelines range represented the legally prescribed minimum, and the ceiling represented the legally prescribed maximum. In contrast, the floor of the guidelines range in Michigan is the lowest minimum sentence a court can impose, and the ceiling is the maximum minimum sentence a court can impose. Yet this difference does not change the following facts: Michigan's guidelines range

is a sentencing range prescribed by law, the ceiling and floor of the range are legally prescribed limits to the minimum sentence that can be imposed, and a minimum sentence falling within the guidelines range is mandatory. Both the floor and the ceiling of the sentencing range define the legally prescribed minimum. Cf. *Alleyne*, 570 US at ___; 133 S Ct at 2160 ("Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally prescribed penalty.").

Significantly, the availability of a departure does not extinguish the "mandatory" nature of the guidelines range. As previously discussed, the Court stated the following in *Booker*:

> The availability of a departure in specified circumstances does not avoid the constitutional issue . . . . [D]epartures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the [Sentencing] Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range. [*Booker*, 543 US at 234.]

The same can be said of departures in Michigan. Departures in Michigan are not available in every case. Indeed, it is well established that the Legislature intended "substantial and compelling reasons" justifying a departure to exist only in "exceptional cases." *Fields*, 448 Mich at 68. Generally, a court must impose a minimum sentence within the guidelines range absent substantial and compelling reasons for a departure. *McCuller*, 479 Mich at 684-685.

Third, the *Herron* panel viewed judicial fact-finding under Michigan's sentencing guidelines as falling within the wide discretion afforded a sentencing court

identified as constitutionally permissible in *Apprendi* and its progeny. *Herron*, 303 Mich App at 405. I do not agree. To be sure, the United States Supreme Court has repeatedly emphasized that it is permissible for courts to exercise discretion to select a sentence *within a range authorized by law*. See, e.g., *Alleyne*, 570 US at ___; 133 S Ct at 2163 ("Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law."); *Apprendi*, 530 US at 481 (explaining that it is permissible "for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute."); *Booker*, 543 US at 233 ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."). In doing so, a sentencing court may consider various sentencing factors, which the Court in *Apprendi* defined as "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense." *Apprendi*, 530 US at 494 n 19. But this simply is not what a sentencing court is doing when it engages in fact-finding to determine the guidelines range for a minimum sentence.

Michigan's sentencing scheme *requires* a sentencing court to engage in fact-finding by scoring the offense variables to determine the applicable guidelines range for a minimum sentence. When a sentencing court in Michigan engages in that fact-finding, it is not finding facts in the exercise of its discretion to select a sentence within a range authorized by law. Rather, it is finding facts to determine a sentence range authorized by law.

" '[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things.' " *Alleyne*, 570 US at ___; 133 S Ct at 2163, quoting *Apprendi*, 530 US at 519 (Thomas, J., concurring). By engaging in the fact-finding required by Michigan's sentencing guidelines, a sentencing court is doing the former. Only after the applicable guidelines range for a minimum sentence has been established on the basis of judicially found facts does a sentencing court then exercise discretion, i.e., the discretion to select a minimum sentence within the guidelines range.

Accordingly, I disagree with the basis for the *Herron* panel's conclusion that the judicial fact-finding required by Michigan's sentencing scheme does not violate the Sixth and Fourteenth Amendments of the United States Constitution. I conclude that it does. Under *Apprendi* and its progeny, the mandatory minimum sentence in Michigan is the guidelines range itself, and the mandatory minimum permissible for purposes of *Alleyne* is the guidelines range as determined solely on the basis of a defendant's criminal history and the facts reflected in the jury's verdict or admitted by the defendant. See *Blakely*, 542 US at 298-300, 303-304, 313; *Booker*, 543 US at 226-227, 235. Yet Michigan's sentencing scheme requires trial courts to engage in fact-finding to determine the guidelines range within which they must fix a minimum term of imprisonment. As a result, facts not found by a jury or admitted by a defendant are used to increase the mandatory minimum sentence, which is a component of the penalty; *Alleyne* prohibits this and, therefore, renders Michigan's indeterminate sentencing scheme unconstitutional. See *Alleyne*, 570 US at ___; 133 S Ct at 2155, 2160-2163.

Given this conclusion, I must disagree with Judge
SHAPIRO's view that "[i]n our sentencing system, . . . it
is only the bottom of the range that presents an
*Alleyne* Sixth Amendment problem." Contrary to
Judge SHAPIRO's assertion in his concurrence, I do not
conclude "that the top end of the applicable Michigan
guidelines range constitutes a 'mandatory maxi-
mum.' " I wholeheartedly agree with Judge SHAPIRO
that "the upper end of the Michigan guidelines has
absolutely no bearing on the maximum term of impris-
onment to be imposed, as that is set by statute. And, at
the same time, it does not set a minimum term above
which the court must sentence." The upper end of the
Michigan guidelines range does, however, have a signifi-
cant bearing on the minimum term of imprisonment to
be imposed, which, contrary to Judge SHAPIRO, I find to
have Sixth Amendment import. When a trial court in
Michigan engages in fact-finding to score the guide-
lines, both the floor and the ceiling of the sentencing
range increase. An increase of the ceiling enhances the
maximum minimum sentence a court can impose. This
undeniably increases the penalty; as the Supreme Court
emphasized in *Alleyne*, "both the floor and ceiling of
sentence ranges . . . define the legally prescribed pen-
alty." *Id.* at ___; 133 S Ct at 2160.

This increase in penalty is best shown by illustration.
Suppose a defendant's criminal history and facts found
by a jury produced an appropriate Michigan guidelines
range of 42 to 70 months' imprisonment. However, after
engaging in statutorily required fact-finding, the appro-
priate guidelines range becomes 51 to 85 months'
imprisonment, and the court imposes a minimum term
of imprisonment of 85 months. Because of the judicial
fact-finding, the maximum possible minimum sentence
to which the defendant was exposed increased from 70
months to 85 months. See, generally, *Apprendi*, 530 US

at 490 (" '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' "). Indeed, the court imposed a minimum sentence that it could not have imposed without judicial fact-finding. The defendant's minimum sentence clearly became more severe—the penalty indisputably increased. But, most significantly, the 85-month minimum sentence was not authorized by the jury because it did not fall within the 42- to 70-month range that the jury authorized. As the Supreme Court so plainly yet emphatically put it in *Blakely*, and then again in *Booker*, "the jury's verdict alone does not authorize the sentence." *Blakely*, 542 US at 305; *Booker*, 543 US at 235. This is the Sixth Amendment import. Therefore, although Judge SHAPIRO correctly recognizes that the United States Supreme Court has not expressly extended its Sixth Amendment jurisprudence so as to bar judicial fact-finding that is statutorily required to determine a "maximum minimum" sentence, I believe such fact-finding is constitutionally invalid under the principles articulated in *Apprendi* and its progeny.

In *Booker*, 543 US at 246, the Supreme Court considered two potential remedies to the invalidity of the federal sentencing guidelines: (1) retain the sentencing scheme as written and engraft the Sixth Amendment jury-trial requirement into the scheme or (2) make the guidelines advisory. The Court chose the latter approach. *Id*. In rejecting the former as incompatible with the Sentencing Reform Act, the Court explained that shifting the fact-finding role for sentencing from a court to a jury would eliminate the use of a presentence report containing factual information uncovered after trial that is relevant to sentencing, it would result in a trial reflecting less completely the real conduct under-

lying the offense and, thus, weakening the vital link between an offender's real conduct and the sentence, and it would undermine the legislative goal of ensuring uniformity in sentencing. *Id.* at 250-254. Further, the Court emphasized that reading the jury requirement into the federal sentencing system would create a variety of complex issues, beginning with the allegations in the indictment and spilling into the trial itself, raising various concerns about the remedy's workability. *Id.* at 254-255.

These same concerns exist when considering what remedy should be adopted to ensure that Michigan's sentencing scheme passes constitutional muster. I would adopt an approach in line with *Booker* that makes the guidelines in Michigan advisory. Under such an approach, a sentencing court must still determine the appropriate guidelines range as provided in MCL 777.21 for purposes of fixing the minimum term of an indeterminate sentence as provided in MCL 769.8(1). The preparation and use of a presentence investigation report would remain to assist the court. See, generally, MCL 771.14. The court must then consider the appropriate guidelines range as an aid; however, it will no longer be required under MCL 769.34(2) to impose a minimum sentence within the appropriate guidelines range. Like the federal sentencing guidelines, the purpose of the Michigan sentencing guidelines is to promote uniformity and consistency in sentencing. *Booker*, 543 US at 250, 253; *People v Peltola*, 489 Mich 174, 189 n 30; 803 NW2d 140 (2011); see also MCL 769.34(2) and (3). Additional purposes include "elimination of certain inappropriate sentencing considerations" and "encouragement of the use of sanctions other than incarceration in the state prison system." *People v Garza*, 469 Mich 431, 435; 670 NW2d 662 (2003); see

also MCL 769.34(3) and (4). Making the guidelines advisory, although not what our Legislature intended, furthers these goals.

In sum, I believe that *Herron* was wrongly decided. Under *Apprendi* and its progeny, which now includes *Alleyne*, the judicial fact-finding required by Michigan's sentencing guidelines to determine a guidelines range within which a sentencing court must fix a minimum term of imprisonment violates the Sixth and Fourteenth Amendments of the United States Constitution. As a remedy, I would make the sentencing guidelines in Michigan advisory as the United States Supreme Court did with the federal sentencing guidelines in *Booker*. However, notwithstanding my disagreement with the decision in *Herron*, *Herron* is binding on this Court and must be followed in this case. See MCR 7.215(J)(1). Therefore, I must concur with the result reached by my colleagues that defendant is not entitled to resentencing.

SHAPIRO, J. (*concurring*). I concur with the lead opinion's conclusions that the trial court did not abuse its discretion by departing upward from defendant's sentencing guidelines range and that defendant's presentence investigation report (PSIR) must be corrected on remand. I write separately because, like Judge BECKERING, I believe that the analysis in *People v Herron*, 303 Mich App 392; 845 NW2d 533 (2013), does not comport with the constitutional mandate of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). *Alleyne* explicitly bars judicial fact-finding that results in an increased mandatory minimum sentence, i.e., a sentencing "floor," and it does so whether that mandatory minimum is defined within the statutory offense or by applicable statutory sentencing guidelines.

In *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), the United States Supreme Court held that the Sixth Amendment bars the use of judicial fact-finding that results in an increase in the maximum term of the sentence that may be imposed on a defendant. In other words, the "ceiling" applicable to a defendant's sentence may not be increased as a result of judicial fact-finding. However, as the Michigan Supreme Court noted in *People v Drohan*, 475 Mich 140, 161-162; 715 NW2d 778 (2006), and *People v McCuller*, 479 Mich 672, 677-678; 739 NW2d 563 (2007), under Michigan's sentencing system, the maximum term is fixed by statute and cannot be affected by judicial fact-finding. Accordingly, because the Michigan guidelines do not set maximum terms of incarceration, these cases held that the guidelines were not subject to a Sixth Amendment challenge. This was surely the case under the controlling federal caselaw. Indeed, the only United States Supreme Court decision that addressed the Sixth Amendment's application to mandatory minimum terms at that time was *Harris v United States*, 536 US 545, 568; 122 S Ct 2406; 153 L Ed 2d 524 (2002) (Kennedy, J.), in which the Court specifically held that the setting of a mandatory minimum through the use of judicial fact-finding "does not evade the requirements of the . . . Sixth Amendment[]."

This situation was, however, wholly altered by the Court's 2013 decision in *Alleyne*, which unequivocally held that that the Sixth Amendment is violated when judicial fact-finding is used to set a mandatory minimum. Indeed, *Alleyne* explicitly stated that "*Harris* is overruled" and went on to hold that "*any fact that increases the mandatory minimum* is an 'element' that must be submitted to the jury." *Alleyne*, 570 US at ___;

133 S Ct at 2155 (emphasis added). It is difficult to imagine language more definitive. *Alleyne* further concluded in absolute terms: "It is *impossible* to dissociate the floor of a sentencing range from the penalty affixed to the crime." *Id.* at ___; 133 S Ct 2160 (emphasis added).

Nevertheless, *Herron* concluded that the low end of a Michigan guidelines minimum sentence range is not "a mandatory minimum floor of a sentencing range." *Herron*, 303 Mich App at 403. This conclusion is difficult to understand since a trial court is statutorily barred from sentencing a defendant to a lesser term, a circumstance that is the *sine qua non* of a mandatory minimum sentence. *Herron*'s best attempt at an explanation is that, while judicial fact-finding may not set a sentencing floor, it may be used "to guide judicial discretion in selecting a punishment within limits fixed by law." *Id.* at 402, quoting *Alleyne*, 570 US at ___; 133 S Ct at 2161 n 2, quoting *Williams v New York*, 337 US 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949) (quotation marks omitted). It is obviously correct that the trial court retains broad discretion to impose a minimum sentence "within limits fixed by law," but *Alleyne* makes it absolutely clear that the trial court does not have the authority to *set* those limits on the basis of its own fact-finding.

Moreover, the definition of "mandatory" that must govern our analysis was set forth in *Booker*, 543 US at 234. There, the Supreme Court ruled that sentencing guidelines are mandatory when a sentencing court is required to apply them, even if departures may be made in limited circumstances.

*Herron* suggests that the only sentencing factors that fall within *Alleyne* are those that are also elements of the crime. However, whether a state labels a sentencing

factor as an element or a sentencing guideline is irrelevant. The United States Supreme Court has been absolutely clear on this issue:

> "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—*no matter how the State labels it*—must be found by a jury beyond a reasonable doubt." . . . "[T]he characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury[.]" [*Booker*, 543 US at 231, quoting *Ring v Arizona*, 536 US 584, 602, 605; 122 S Ct 2428; 153 L Ed 2d 556 (2002) (emphasis added).]

While I reject *Herron*, I do not agree with Judge BECKERING's conclusion in her concurrence that the top end of the applicable Michigan guidelines range constitutes a "mandatory maximum." First, this proposition was rejected by our Supreme Court in *Drohan*, 475 Mich at 161-162, and *McCuller*, 479 Mich at 677-678. Moreover, the upper end of the guidelines range in a particular case does not place a cap on the defendant's period of incarceration. Under our sentencing system, the highest term of incarceration that may be imposed is set exclusively by the statutory maximum for the crime. Judge BECKERING refers to the federal guidelines cases as holding that the guidelines "range" is constitutionally infirm. However, under the federal system the "range" in question is different than the one in Michigan. Under the federal determinate sentencing scheme, in which a defendant is given a single term rather than a minimum term and a maximum term, the low end of the guidelines range represents the least amount of time for which the defendant may be incarcerated. Thus, it has the same function and effect as the low end of the Michigan guidelines range. However, the upper end of the federal guidelines range represents the maximum term of imprisonment that the defendant

may be required to serve. That is not what the upper end of the Michigan guidelines represents. As discussed earlier and by the Michigan Supreme Court in *Drohan*, 475 Mich at 161-163, the upper end of the Michigan guidelines has absolutely no bearing on the maximum term of imprisonment to be imposed, as that is set by statute. And, at the same time, it does not set a minimum term above which the court must sentence.

Judge BECKERING correctly observes that the upper end of the Michigan guidelines constitutes a "maximum minimum," but there is no case that establishes that category as being of Sixth Amendment import. See *id.* at 162-163; *McCuller*, 479 Mich at 689-691. And the United States Supreme Court has never applied its Sixth Amendment analysis to a "maximum minimum," only to "maximums" and "minimums." The top end, or maximum minimum, of a Michigan sentencing guidelines range is a sui generis creature. It does not create a mandatory minimum because a trial court has full discretion to impose a sentence well below it, as long as that sentence is not below the floor of the guidelines range. Further, it has no relevancy to the maximum term of imprisonment. In sum, while it limits a court's ability to sentence above a certain minimum term, it does not trigger a constitutional issue. While the United States Supreme Court may at some point consider extending its Sixth Amendment jurisprudence to bar judicial fact-finding that places a cap on the minimum term that may be imposed, it has not done so to date.

I therefore disagree with Judge BECKERING's view that *Alleyne* renders the entirety of Michigan sentencing guidelines constitutionally infirm. *Alleyne* bars judicial fact-finding only to the degree that fact-finding is used to set a sentencing "floor," i.e., a mandatory minimum. In our sentencing system, it is only the

bottom of a given guidelines range that constitutes a floor, and so it is only the bottom of the range that presents an *Alleyne* Sixth Amendment problem. The top of a given guidelines range does not set a mandatory minimum, and thus setting it through judicial fact-finding presents no constitutional impropriety, at least under the present state of the law. Moreover, when ruling a portion of an act unconstitutional, courts are required, when possible, to invalidate only the portions of the act necessary to allow it to pass constitutional muster. MCL 8.5; *Blank v Dep't of Corrections*, 462 Mich 103, 122-123; 611 NW2d 530 (2000).

While judicial fact-finding may be constitutionally used to set an upper limit on a minimum term, it may not be constitutionally used to set a lower limit, as that limit constitutes a sentencing "floor" as defined in *Alleyne*. Like Judge BECKERING, I would follow the United States Supreme Court's approach to the remedy in such a setting, i.e., by holding that when there is a constitutional infirmity in the guidelines, their application shall be advisory rather than mandatory. However, contrary to Judge BECKERING's view, only the lower end of a guidelines range, or "minimum minimum," constitutes a sentencing floor under *Alleyne*, and, therefore, only the lower end of a range need be advisory only. Under this approach, trial courts would continue to score the guidelines on the basis of findings made under a preponderance-of-the-evidence standard. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Upper limits of the guidelines would remain mandatory, with upward departures permitted only when there are "substantial and compelling" reasons for them. *People v Smith*, 482 Mich 292, 299; 754 NW2d 284 (2008); MCL 769.34(3). Downward departures from the lower end of a range would be subject to appellate review for reasonableness. This approach does not imply that the lower

end of the guidelines should be ignored. As the United States Supreme Court stated, even when not mandatory, trial courts "must consult th[e] Guidelines and taken them into account when sentencing." *Booker*, 543 US at 264.

Defendant was sentenced to a minimum term of 96 months, well above the mandatory minimum of 43 months set by the low end of the applicable guidelines range. The factual findings made by the trial court, therefore, did not prevent defendant from receiving a minimum sentence below that floor. Accordingly, the factual findings made by the trial court did not violate defendant's Sixth Amendment rights, and he is not entitled to resentencing.