# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

DAVID HENRY JOHNSON,

      Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 318833
Tuscola Circuit Court
LC No. 13-012673-FH

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

After a jury trial, defendant was convicted of operating/maintaining a laboratory involving methamphetamine, second or subsequent offense, MCL 333.7401c(2)(f) and MCL 333.7413(2), delivery/manufacture of methamphetamine, second or subsequent offense, MCL 333.7401(2)(b)(*i*) and MCL 333.7413(2), and possession of methamphetamine, second or subsequent offense, MCL 333.7403(2)(b)(*i*) and MCL 333.7413(2). The court sentenced defendant to prison terms of 10 to 20 years for operating/maintaining a laboratory involving methamphetamine and delivery/manufacture of methamphetamine, and 2 to 10 years for possession of methamphetamine. All of defendant's sentences were to be served concurrently but consecutive to an underlying parole term. For the reasons set forth below, we affirm.

## I. FACTS

The Michigan State Police (MSP) received what appeared to be a credible tip from a confidential informant regarding methamphetamine at defendant's home. After arriving at defendant's residence, officers approached and knocked on the door. Defendant's girlfriend, Tammy Harbin, answered the door. A MSP trooper asked Harbin if defendant was home, and Harbin gave a non-verbal cue with her head pointing toward the closed bathroom door. Officers entered the house and opened the bathroom door to find defendant shirtless and "hunched over, very rigid in his body," making jerky movements and shivering. They observed what they believed to be components of methamphetamine production in the bathroom and noticed a strong chemical smell in the air.

As a MSP trooper was assisting defendant, Harbin was asked by another officer if methamphetamine was being manufactured in the house. She indicated that "it's in the bedroom." Defendant later stated that methamphetamine was being made in the house and

-1-

offered to take an MSP sergeant to the location. Defendant took the officer to a bedroom, and when the door was opened, the officer observed a pedestal fan that was running and the overwhelming smell of chemical fumes. Defendant pointed to a cardboard box and said, "[I]t's in there." The box contained lye, plastic tubing, and coffee filters, all of which are used in the production of methamphetamine. Additional components of methamphetamine production were observed on the dresser. After a security check of the house, the decision was made to evacuate the house and to contact the methamphetamine team.

A MSP trooper performed an outdoor perimeter check of defendant's residence and observed in the snow a heavily traveled footpath between the house and outbuildings. The footpath led to a small wooded area 40 to 50 yards from the house. At the end of the path the trooper observed a toilet in the woods with the lid partially closed. Inside the toilet was a plastic container that the trooper believed contained hazardous material associated with a methamphetamine lab.

During the course of the investigation, lithium batteries, rock salt, a glass jar containing a bluish liquid, a torn-open cold pack, the bottle with the tubing stuck in the top, more tubing of that type, a bottle of drain opener, tin foil, coffee filters, table salt, and pseudoephedrine pills were found. All of these materials are involved in the manufacture of methamphetamine. Based on his experience and training, one MSP trooper suspected the bluish liquid was Coleman fuel, which is a solvent used in the production of methamphetamine. A MSP trooper qualified as an expert in illegal manufacture of methamphetamine explained that many of the items taken from the house were destroyed pursuant to Drug Enforcement Administration and state policy because they are considered potentially hazardous, but four samples were taken and tested. Two contained methamphetamine and two were inconclusive. Additionally, field tests were conducted on the bluish liquid. The tests indicated that the liquid was a solvent that the officer believed to be Coleman fuel.

One of the MSP troopers took defendant and Harbin to the police station and interviewed them. After waiving his *Miranda*[1] rights, defendant stated that he, Harbin, and the confidential informant were cooking methamphetamine at his residence. He explained that the informant brought the needed materials and cooked it. Defendant indicated that the informant taught defendant and Harbin how to cook it and how to smoke it. After smoking the methamphetamine, defendant, Harbin, and Jessica Yax purchased more materials and cooked more methamphetamine at defendant's residence. During a subsequent interview with his parole officer on January 11, 2013, defendant again stated that the informant had introduced him to methamphetamine and that he, Harbin, and the informant manufactured the drug and that he continued to use it.

## II. SPEEDY TRIAL

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 294 (1966).

Defendant first argues that he was denied his right to a speedy trial. To preserve a speedy trial issue for appeal, a defendant must make a formal demand for a speedy trial on the record. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Defendant was arrested on January 8, 2013, and demanded a speedy trial on January 30, 2013. However, defendant stipulated to an adjournment of the trial date from April 30, 2013 to July 23, 2013, to allow him to obtain an independent laboratory analysis of the four samples. The stipulation and order specifically states that "[s]aid adjournment is attributable to the defendant and he is waiving any speedy trial objection he may nor may not be entitled to." "[A] defendant cannot claim error based upon actions that his lawyer deemed proper at trial or as to which he otherwise acquiesced." *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002). Additionally, we note that trial did not commence on July 23, 2013, because defense counsel was admitted to the hospital the night before. As a result, the trial did not actually commence until two weeks later on August 6, 2013. Thus, the delays at issue are attributable to defendant, which vitiates against a finding that he was denied any right to a speedy trial. See *People v Waclawski*, 286 Mich App 634, 666-667; 780 NW2d 321 (2009) (stating that the reason for the delay is one of the factors to consider when deciding whether a defendant was denied the right to a speedy trial).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel as a result of the cumulative effect of several alleged errors on the part of defense counsel. To preserve a claim of ineffective assistance of counsel, a defendant should move for a new trial or a *Ginther*[2] hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant's motion in the trial court was dismissed as untimely. Because defendant's claim of ineffective assistance of counsel is unpreserved, our review is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Effective assistance of counsel is presumed and a defendant bears a heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994); *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v Gioglio (On Remand)*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012).

### A. CHANGE OF VENUE AND/OR REQUEST FOR A DIFFERENT JURY POOL

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant argues that defense counsel was ineffective in his handling of jury selection. Counsel's decisions relating to the selection of jurors is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). In order to succeed on a claim of ineffective assistance of counsel based on the failure to challenge or remove a juror, a defendant must show that the outcome of the trial would likely have been different had the juror not participated in deliberations. See *Hughes v United States*, 258 F3d 453, 458 (CA 6, 2001).

Defendant first raises a concern about a juror and a prospective juror who said that they would not be inclined to believe Jessica Yax, who defendant planned to call as a witness. However, Yax never testified, so there is no basis to find any prejudice. Defendant also questions defense counsel's handling of a juror who indicated that her "life experiences" with family members who had drug and alcohol abuse issues would impact her ability to be fair and impartial. We conclude that counsel's failure to use a preemptory challenge or to challenge this juror for cause could have been a matter of trial strategy. The juror's indication of a possible bias was not explored, so it is not clear if her "life experiences," which included close family members battling drug and alcohol addiction, made her potentially more sympathetic toward drug abusers or less sympathetic. But given counsel's superior ability to assess the juror, we are "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Further, after the clerk administered the oath, which included an affirmance that the jury would "render your verdict only on the evidence introduced an in accordance with the instructions of the Court," the jury responded, "I do." Finally, in light of the overwhelming evidence of defendant's guilt, including his confession, defendant has failed to show that the outcome of the trial would likely have been different had this juror not participated in deliberations. *Hughes*, 258 F3d at 458.[3]

Another potential juror also indicated that he could not be fair because of his experiences with people affected by drugs. He did not serve, however. And a juror who said that she was "strictly against drugs" and that she used to work for the prosecuting attorney as a secretary said that neither of those things could affect her ability to be fair or impartial. Defendant offers nothing to call into doubt this affirmation.

Defendant also cites defense counsel's handling of a juror who stated that it is the job of a police officer "to tell the truth." Defendant claims that this statement constitutes a disqualifying prejudice. However, the juror had already indicated that he could be fair and impartial and that

---

[3] Defendant argues that his right to a fair and impartial jury was compromised because the comments of the two jurors and the one potential juror discussed above tainted the entire jury pool. However, he fails to develop this argument beyond this mere assertion. "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).

he was not inclined to believe a police officer more than anyone else. We do not question counsel's handling of the juror under these circumstances.

Citing to *People v Jendrzejewski*, 455 Mich 495; 566 NW2d 530 (1997), defendant also argues that defense counsel was ineffective by failing to renew his motion for change of venue due to the high percentage of the venire who admitted to a disqualifying prejudice. *Jendrzejewski* held, in part, that "[c]ommunity prejudice amounting to actual bias has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, more infrequently, community bias has been implied from a high percentage of the venire who admitted to a disqualifying prejudice." *Id.* at 500-501. The present case does not involve pretrial publicity and its affect on the jury venire. Further, defendant has failed to demonstrate that a high percentage of the venire admitted to a disqualifying prejudice, asserting without any analysis that "after exhausting all of the preemptory challenges, there were 4 members of the jury who had a disqualifying prejudice." "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## B.  FAILURE TO INVESTIGATE WHY JESSICA YAX WAS NOT CHARGED

Defendant argues that defense counsel failed to inquire from the police why Jessica Yax was not charged with a crime. He speculates that there might have been an undisclosed deal with Yax not to charge her in exchange for her testimony in violation of *Giglio v United States*, 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972). However, because Yax did not testify, a *Giglio* violation could not have occurred. Whether and why Yax was charged or not charged are not relevant to any fact in defendant's case.

Within the context of his claim of ineffective assistance, defendant asserts, without analysis, that his right to confront Yax was violated. This argument is unrelated to defendant's claim of ineffective assistance of counsel. "Implicit in the Supreme Court's Confrontation Clause jurisprudence is that a witness must put forth *some testimony* before the defendant's right of confrontation comes into play. A defendant has no right to confront a witness who does not provide any evidence at trial." *People v Gearns*, 457 Mich 170, 185, 186-187; 577 NW2d 422 (1998), overruled on other grounds by *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999) (emphasis in original). Yax never gave any testimony at trial; thus, defendant's right of confrontation was not violated.

## C.  ADMISSION OF PHOTOGRAPHS AND THE METHOD OF DRUG TESTING

Defendant argues that defense counsel should have objected to the admission of certain photographs because the photographs did not reflect the scene as the police found it. However, the jury was made aware that the photographs did not reflect the scene as it was found. The decision not to object to the photographs under these circumstances falls within the range of reasonable professional conduct. And defendant has failed to show that, but for the admission of the photographs, the result of the proceeding would have been different in light of the overwhelming evidence of defendant's guilt. *Armstrong*, 490 Mich at 289-290.

Defendant also argues that counsel was ineffective by failing to object to the method of testing the methamphetamine. He fails to explain, however, what was wrong with the method that was used or on what grounds defense counsel should have raised an objection. Defendant has abandoned this argument by failing to properly address the merits of the assertion. *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012).

Defendant additionally argues that defense counsel failed to object to evidence being destroyed before he had the opportunity to test it. He refers only to the substance that the police identified as "Coleman fuel" and asserts that the substance was actually Miracle-Gro. It appears that he is arguing that independent testing of the solution would have revealed that the substance was in fact Miracle-Gro and, therefore, the destruction of the evidence denied him the right to present a defense. However, defense counsel did argue that the prosecution failed to prove that the liquid was Coleman fuel. Moreover, defendant has failed to show, even if he had shown that the substance was Miracle-Gro, that the result of the proceeding would have been different in light of the other evidence of items used in the manufacture of methamphetamine as well as defendant's confession. *Armstrong*, 490 Mich at 289-290.

## D. FAILURE TO SECURE WITNESSES FOR TRIAL

Defendant argues that defense counsel failed to secure the presence of 37 witnesses for trial. He contends that "many of the witnesses would have explained why Defendant had the so-called methamphetamine components." Defendant only identifies one witness that he claims should have been called. The record reveals that defense counsel advised the trial court on the morning of August 9 that the mother of this potential witness had passed away the night before and that he was on his way out of the country and, therefore, unavailable to testify. Defendant has not attached an affidavit from the witness indicating how he would have testified. We will not engage in any speculation on how the proceeding would have been different under these circumstances.

Defendant also argues that defense counsel failed to arrange for a court order requiring the Department of Human Services to provide documentation establishing that Harbin was residing at defendant's home where the evidence was found and that defendant was therefore "not in control of the whole household." The record reveals, however, that defense counsel stated on the record the following:

> DHS did present themselves in reference to the order this morning and Mr. Abbey went through their file and talked with them and they presented their entire file. In fact, they brought us both the file on Miss Harbin that they have and Mr. Johnson, and there was no documentation in there signed by Miss Harbin reflecting anything that was relevant to the case. . . . So we have excused them from appearing.

Thus, defendant's argument is without merit.

## E. DASHBOARD CAMERAS

Defendant speculates that if defense counsel had investigated whether the police cars had dash cameras he might have been able to obtain evidence to determine whether the officers entered his residence in violation of the Fourth Amendment. Defendant offers no evidence or argument or any allegations in support of this assertion. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

## F. CUMULATIVE ERROR

Defendant contends that he was denied the effective assistance of counsel due to the cumulative effect of defense counsel's errors. The cumulative effect of several minor errors may warrant reversal even when the individual errors would not warrant reversal. *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). But because there are no errors to cumulate, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

## IV. SIXTH AMENDMENT RIGHT OF CONFRONTATION

Defendant argues that he was deprived of his right of confrontation because the informant's statements to the police implicated him in the crimes, but the informant was allowed to assert his right against self-incrimination. But defendant did not object on the ground that admission of the informant's statements violated his right of confrontation. An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Bulmer (After Remand)*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A defendant has the right to be confronted with the witnesses against him or her. US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 US at 68. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. *United States v Cromer*, 389 F 3d 662, 675 (CA 6, 2004). However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. *McPherson*, 263 Mich App at 133, citing *Crawford*, 541 US at 59 n 9. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. *People v Lee*, 391 Mich 618, 642-643; 218 NW2d 655 (1974). Specifically, a statement offered to show why police officers acted as they did is not hearsay. *People v Jackson*, 113 Mich App 620, 624; 318 NW2d 495 (1982).

Defendant has not identified in his analysis of this issue the statements that he asserts were offered in violation of his right to confront the confidential informant. An appellant may not merely assert an issue and leave it to this Court to search for a factual basis to sustain or reject his position. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Thus, the issue is abandoned. But even if we were to assume that two sentences he underlined in his

statement of facts in his brief on appeal are intended to represent the allegedly improperly admitted statements, no relief is warranted.

The first underlined statement reads, "[Trooper Leddy] said contact was made with [the informant], who provided information implicating Defendant and Tammy Harbin." A review of the cited pages reveals that Trooper Leddy testified regarding a credible tip from the informant regarding defendant and his girlfriend, Tammy. The tip also involved a location. Based on the information received, officers proceeded to defendant's residence. The testimony was not offered to establish the truth of the informant's tip. Rather, it was offered to establish and explain why the police investigated defendant's home and how defendant came to be arrested. Because the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation. *McPherson*, 263 Mich App at 133.

The second underlined sentence reads, "[the confidential informant] accused others of cooking methamphetamine, including Defendant and Tammy Harbin." However, it was defense counsel who elicited this information through his cross-examination of Trooper Leddy. Furthermore, this information, like the other information, was being offered to show how the police investigation progressed; it was not offered to prove the truth of the matter asserted, which means that defendant's right to confrontation was not implicated. *Id.* Therefore, defendant has failed to establish plain error affecting his substantial rights, and his assertion has no merit.

## V. FAILURE TO PRESERVE EVIDENCE

Defendant argues that he was deprived of the ability to present important evidence because the police failed to preserve crucial evidence seized from his residence that would have given the jury substantial reason to doubt his guilt. Photographs of the evidence taken before its destruction were admitted into evidence. Defendant did not preserve this issue by objecting or moving to dismiss in the trial court. Thus, this issue is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Defendants have a due process right to access the evidence against them. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). Thus, the prosecution's deliberate or inadvertent suppression of material evidence that is favorable to the accused violates due process. *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014), citing *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999). Likewise, the government's failure to preserve potentially exculpatory evidence may violate a defendant's due process rights. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 281 (1988). However, to prevail on a failure-to-preserve claim, defendant must show that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith in failing to preserve it. *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012).

In this case, the destroyed evidence included various items used in the production of methamphetamine—specifically Energizer brand lithium batteries, a one-gallon glass jar with Coleman fuel, a glass plate, Equate brand cold packs, a Brisk tea bottle, salt containers, drain opener, coffee, filters, tubing, aluminum foil, and razor blades. An industrial hygienist testified that all of the items were hazardous with the exception of sodium hydrochloride. A Michigan

State Police Sergeant testified that the items were destroyed pursuant to Drug Enforcement Administration and state policy regarding the handling of hazardous materials. He testified that the chemicals used during the production of the drug are explosive, that they stick to items, and that all of the items taken away that night and destroyed were determined to be hazardous. Therefore, defendant has not established any plain error because he has not shown that the police destroyed the evidence in bad faith nor has defendant shown that the evidence was potentially exculpatory.

## VI. GUIDELINES SCORING

Lastly, defendant argues that the trial court erred by scoring 10 points for offense variable (OV) 14 because no evidence was presented that defendant was the leader in a multiple offender situation. Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. *Id.*

OV 14, which takes the offender's role into account, is scored at 10 points if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). However, more than one offender can be a leader. MCL 777.44(2)(b). In addition, "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

Defense counsel argued that the prosecution presented no evidence that defendant was the leader. The presentence information report, however, recommended that OV 14 be scored at 10 points because the methamphetamine lab was located at defendant's residence. The trial court scored 10 points, reasoning as follows:

> I believe that there's plenty of information contained in the Court's record including the Sentence Information Report. This having been a jury trial, the Court is privy to more information than typically if this had been a plea, but looking at the Sentence Information Report alone, the Court could find by a preponderance of the evidence that Mr. Johnson was a leader in this multiple offender situation. So Offense Variable Number 14 is properly scored at ten.

On appeal, defendant argues not only that he was not a leader, but additionally argues that the trial court engaged in judicial fact finding in violation of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), in assessing 10 points for OV 14. But this Court has determined that the decision in *Alleyne* does not implicate Michigan's sentencing scheme because "judicial fact-finding within the context of Michigan's sentencing guidelines [is] not used to establish the mandatory minimum floor of a sentencing range." *People v Herron*, 303 Mich App 392, 403; 845 NW2d 533 (2013), appeal held in abeyance 846 NW2d 924 (2014). The decision in *Herron* is currently binding on this Court and must be followed. MCR 7.215(J)(1); see also *People v Lockridge*, 304 Mich App 278, 284; 849 NW2d 388 (2014), lv gtd 496 Mich 852 (2014).

Contrary to defendant's assertion, the trial court's assessment of points on this variable was substantially supported by testimony and evidence on the record, including defendant's own admission that he wanted to manufacture more methamphetamine after being introduced to it, that he purchased supplies to manufacture the drug, and that he participated in the manufacturing of the drug in his own home. Thus, adequate record evidence existed to support the trial court's findings, and a preponderance of the evidence support the trial court's factual findings.

Affirmed.

/s/ Pat M. Donofiro
/s/ Michael J. Riordan
/s/ Michael F. Gadola